**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, LOCAL UNION NO. 441, Plaintiff-Appellant,**

v.

**KBR ELECTRIC, Defendant-Appellee.**

No. 85–6263.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 1986.

Decided March 9, 1987.

Stephen C. Downey, Los Angeles, Cal., for plaintiff-appellant.

Roy E. Potts, Robert Hayden, Los Angeles, Cal., for defendant-appellee.

Before ANDERSON and CANBY, Jr., Circuit Judges, and SOLOMON,* District Judge.

CANBY, Circuit Judge:

Local Union 441, International. Brotherhood of Electrical Workers, AFL–CIO (Local 441) sued to enforce an arbitration decision directing KBR Electric (KBR) to submit its payroll records to several union trust funds in order to enable the trust funds to assess KBR for delinquent contributions. KBR moved for summary judgment, and the district judge granted the motion on three alternative grounds: (1) KBR ended its obligation to contribute to the trust funds by repudiating its pre-hire agreement with Local 441; (2) Local 441's action to enforce the arbitration award was barred by laches and by the six month limitation period of 29 U.S.C. § 160(b)(1982); and (3) the arbitration award was invalid because the arbitration procedure did not comply with the procedure specified in the collective bargaining agreement. We agree with the first ground relied upon by the district court, that KBR ended its obligation to contribute to the trust funds by repudiating its pre-hire agreement with Local 441. We therefore affirm without ruling upon the second and third alternative grounds.

**FACTS:**

In March 1973, Elving Audio, Inc., the predecessor to KBR, signed a "short form" agreement with Local 441. This short form agreement, which was renewed several times, bound Elving Audio and later KBR to the existing Inside Labor Agreement between Local 441 and the Orange County Chapter, National Electrical Contractors Association. One of the provisions of the Inside Labor Agreement required employers to contribute to several union trust funds. On January 1, 1978, KBR

---

* The Honorable Gus J. Solomon, Senior United States District Judge, for the District of Oregon, sitting by designation. We are sorry to report that Judge Solomon died on February 15, 1987. He concurred in this opinion prior to his death.

renewed the short form agreement with Local 441 and agreed to give notice of any intent to terminate the agreement with Local 441 not less than 150 days before the termination date of the Inside Labor Agreement, May 31, 1979.

On June 4, 1979, KBR notified Local 441 by letter that KBR was terminating the short form agreement as of June 14, 1979.[1] Eighteen months passed. KBR continued to receive reporting forms for the Orange County Electrical Industry Funds and the National Electrical Benefit Funds, and KBR returned them with notations of "none" or "no employees." During this time KBR bypassed the Union hiring hall and paid non-union wages and benefits to its employees.

In January 1981 KBR returned a pension fund reporting form with the statement that it had not been affiliated with Local 441 since June 1979 and did not understand why it was still receiving reporting forms. Local 441 then began an arbitration proceeding under the Inside Labor Agreement requesting that KBR be ordered to submit its payroll records to the trust funds. KBR refused to participate in the arbitration proceeding. On December 28, 1981, the arbitrators rendered an award in favor of Local 441, and on August 30, 1983, Local 441 sued to enforce the arbitration award.

The district judge granted KBR's motion for summary judgment, and Local 441 now appeals. The court found that KBR's agreement with Local 441 was a pre-hire agreement under § 8(f) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(f)(1982), and that KBR was therefore free to repudiate the agreement at any time until the union achieved majority status in a permanent and stable work force. The court also found that "KBR has always hired its employees on a job-by-job basis, and never had a permanent and stable work force at any time between March 7, 1973 and June 14, 1979." The court concluded that KBR's June 4, 1979 letter was an effective repudiation of the agree-

ment with Local 441, and that Local 441's action to enforce the arbitration award was barred in any case by laches and by the six month limitation period of 29 U.S.C. § 160(b)(1982). Finally, the court ruled that the arbitration award was invalid because the arbitration procedure violated the Inside Labor Agreement's requirement of a four-person panel.

Local 441 contends on appeal that the Letter of Assent was not a pre-hire agreement, that KBR did not effectively repudiate or terminate its agreement with Local 441, that the district court should have deferred to the arbitrators' decision, and that Local 441's action to enforce the arbitration award was not barred by laches or by the statute of limitations.

## DISCUSSION:

This court reviews grants of summary judgment *de novo*. *Fagner v. Heckler*, 779 F.2d 541, 543 (9th Cir.1985). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). We conclude that there are no genuine issues of material fact regarding KBR's repudiation of the agreement and that the district court correctly applied the law governing § 8(f) pre-hire agreements. We therefore affirm.

 Section 8(f) of the NLRA, 29 U.S.C. § 158(f)(1982), allows construction industry employers to execute "pre-hire" agreements with unions that have not yet achieved majority status. *Orange Belt Dist. Council of Painters No. 48 v. Kashak*, 774 F.2d 985, 988 (9th Cir.1985). A pre-hire agreement is a collective bargaining agreement that recognizes a minority union as the exclusive bargaining representative for a company's employees. Pre-hire agreements can be repudiated by either party until the union establishes that it represents a majority of employees in a stable work unit. *Construction Erectors,*

---

**1.** Both parties agree that KBR's June 4 letter was not a valid termination of the short form agreement because it was not sent 150 days

before the termination of the Inside Labor Agreement.

*Inc. v. N.L.R.B.*, 661 F.2d 801, 803 (9th Cir.1981). Once a union achieves majority status in a stable work unit, the § 8(f) pre-hire agreement becomes a binding collective bargaining agreement under § 9(a) of the NLRA, *N.L.R.B. v. Local Union 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586, 598 (1978), and unilateral repudiation is generally prohibited by the contract bar rule. *Precision Striping, Inc. v. N.L.R.B.*, 642 F.2d 1144, 1147 (9th Cir.1981).

■ Local 441 contends that KBR's only two electrician employees in the period from September, 1977 to March, 1978 were both union members, and that Local 441 therefore achieved majority status in a stable work force during the time of the January 1, 1978 short form agreement. The union concludes that its agreement with KBR was a binding collective bargaining agreement under § 9(a) of the NLRA, and that KBR was not entitled to repudiate the agreement.

We disagree. The record indicates that KBR employed at least nine persons at various times in 1977, and at least twenty-one persons in 1978. Five of the nine persons hired in 1977 worked for five days or less, and two were laid off after two months. It appears that only one or two persons worked for KBR in both 1977 and 1978. These figures indicate that KBR's work force was not a stable or permanent unit at the time of the contract. *See Construction Erectors v. N.L.R.B.*, 661 F.2d at 804 (construction employer's work force held to be neither stable nor permanent because 62 employees were referred from hiring hall in first year of agreement and only 6 of 13 employees working on date of agreement had been working more than three weeks).

Local 441 also argues that even if the short form agreement was initially a pre-hire agreement, and even if KBR's work force was not permanent and stable, Local 441 subsequently achieved majority representation at one of KBR's job sites and the agreement then matured into a binding collective bargaining agreement with regard to future job sites. This argument is without merit. Contrary to appellant's assertions, *N.L.R.B. v. Pacific Erectors, Inc.*, 718 F.2d 1459 (9th Cir.1983), does not stand for the proposition that when an employer hires on a job-by-job basis, a union majority at the first job site creates a presumption of majority support at future job sites. The court in *Pacific Erectors* held only that if a majority of employees at a particular job site belong to a union, then there is a rebuttable presumption of majority support for the union at that job site, and the employer is generally bound by the agreement for the duration of the job. *Id.* at 1464. In the present case, Local 441 does not contend that KBR attempted to dismiss union workers in the middle of a job. *Pacific Erectors* therefore does not apply.

■ Finally, Local 441 contends that even if the contract was at all times a pre-hire agreement, KBR's June 4, 1979 letter was not sufficient to repudiate the agreement. Local 441 contends that an employer may repudiate a pre-hire agreement only by calling for a representation election, and that in any case KBR's letter and subsequent conduct did not clearly indicate an intention to repudiate the contract. Again, we disagree.

First, this court has held that a representation election is only one of three distinct methods by which an employer can repudiate a pre-hire agreement. *See Carpenters Southern California Administrative Corp. v. J.L.M. Construction Co., Inc.*, 809 F.2d 594 (1987). There we stated that "[t]here are three distinct methods by which an employer can repudiate a pre-hire agreement: (1) by calling for a repudiation election to show that the union does not enjoy majority support; (2) by giving actual notice (written or oral) to the union; or (3) by engaging in conduct so overtly inconsistent with contractual obligations that it is sufficient to put the union on notice of the employer's intent to repudiate." At 598; *see also United Brotherhood of Carpenters & Jointers of America, Local 2247 v. Endicott Enterprises, Inc.*, 806 F.2d 918, 922–23 (9th Cir.1986) (employer may repudiate pre-hire agreement by conduct).

KBR's failure to call for a representation election thus did not preclude it from repudiating the pre-hire agreement.

Second, KBR's letter to Local 441 and subsequent conduct provided clear notice to the union that KBR intended to end the contract. In *Carpenters Southern California Administrative Corp.*, we held that J.L.M. Construction Co. had repudiated a pre-hire agreement by engaging in conduct overtly inconsistent with its contractual obligations over a five-year period. At 599. JLM never represented itself as a union employer, never used the union hiring hall, and did not pay union wages or benefits. At 599. We reasoned that JLM's conduct was sufficient to put the union on notice that JLM intended to repudiate the contract. Slip op. at 11. In the present case, KBR's June 4, 1979 letter to Local 441 clearly indicated that KBR intended to end its contractual obligations:

As of June 1, 1979, there is no longer an agreement between Local # 441 I.B.E.W. Orange County Chapter and the employers. Therefore, KBR Electric is giving ten (10) days notice of termination of agreement between KBR and Local # 441 as per Sect. 2.2 subparagraph D of the 1977–1979 Agreement between Orange County Chapter National Electrical Contractors Association, Inc. and I.B.E.W. Local Union # 441.

KBR's subsequent conduct was entirely consistent with its letter announcing its intention to end the contract. After sending the letter, KBR represented itself as a non-union employer, bypassed the union hiring hall, and paid non-union wages and benefits to its employees. This is precisely the conduct held sufficient to effect repudiation in *Carpenters Southern California Administrative Corp.* We therefore hold that KBR's June 4, 1979 letter and its subsequent conduct were sufficient to put Local 441 on notice of KBR's intent to repudiate.

Local 441's arguments to the contrary are not persuasive. Local 441 contends that KBR's June 1979 letter indicated an intent to terminate rather than repudiate the contract, and that KBR's notations of

"none" and "no employees" on its post-June reports to the trust funds misled the union about KBR's intentions. We disagree. KBR's letter clearly indicated that it no longer considered itself bound by the contract, and KBR's open non-union hiring and operations were sufficient to overcome any ambiguity in the notations on the trust fund reporting forms. Even viewing these possible ambiguities in the light most favorable to Local 441, we hold that there is no genuine issue of material fact on the question of whether KBR's conduct was sufficient to put the union on notice of its intent to repudiate.

Because we hold that KBR ended its obligations to the trust funds by repudiating its pre-hire agreement with Local 441, we do not consider whether Local 441's action to enforce the arbitration award was barred by laches or by the statute of limitations. We also do not consider whether the arbitration award was invalid because the arbitration procedure did not comply with the procedure specified in the collective bargaining agreement.

AFFIRMED.