**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS, on behalf of itself, and on behalf of Laborers Local Union No. 371, Petitioner,**

v.

**STRAUSS CONSTRUCTION CO., INC., Respondent.**

**STRAUSS CONSTRUCTION CO., INC., Plaintiff,**

v.

**LABORERS LOCAL UNION NO. 371, Defendant.**

**Nos. C–86–3442 WHO, C–86–2935 WHO.**

United States District Court, N.D. California.

April 27, 1987.

Victor J. Van Bourg, Van Bourg, Weinberg and Roger, San Francisco, Cal., for petitioner.

James T. Winkler, Atkinson, Andelson, Loya, Ruud & Romo, Cerritos, Cal., for respondent.

## OPINION AND ORDER

ORRICK, District Judge.

These two actions, each of which is brought pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1978), and consolidated for trial for all purposes, involve the same parties, namely, Strauss Construction Co., Inc. ("Strauss Construction"") and the Northern California District Council of Laborers and Laborers Local Union No. 371 (jointly the "Union"), and the same subject matter, namely, an arbitration award enforcing a § 8(f) prehire agreement (the "Agreement"), National Labor Relations Act ("NLRA") § 8(f), 29 U.S.C. § 158(f) (1982). In the first case brought by Strauss Construction against the Union (the "*Strauss* action"), Strauss Construction seeks to vacate the award claiming that (1) it never entered into the Agreement with the Union, and (2) even if it entered into the Agreement, it effectively repudiated the Agreement at a time when the contract was voidable. In the second case (the "*Union* action"), the Union seeks to enforce the award.

The actions are before the Court on cross-motions for summary judgment. For the reasons hereinafter stated, this Court grants Strauss Construction's motion for summary judgment in the *Strauss* action and denies the Union's motion for summary judgment; in the *Union* action, the Court denies the Union's motion for summary judgment and grants Strauss Construction's motion for summary judgment.

## I

Strauss Construction is a California corporation engaged in the construction industry as a general contractor. It is based in Southern California and only sporadically performs work in Northern California. Strauss Construction, however, was awarded the contract to perform work on the Granada Royale Hotel in Napa, California. David Strauss, the President of Strauss Construction, told Don Payne, the business agent for Local 371, that it had not signed any collective bargaining agreement relating to laborers in Northern California. The business agent then filed a grievance in response to which Strauss Construction's attorneys sent a letter to the Northern California District Council of Laborers, dated September 4, 1984, that stated that "Strauss does not believe that it has ever been bound to any collective bargaining agreements with your labor organization, as your labor organization has never represented a majority of Strauss's employees in an appropriate collective bargaining unit. However, to avoid any confusion, *Strauss hereby gives you notification of repudiation and termination effective immediately of any collective bargaining agreements which you may claim are in existence.*" Declarations of James T. Winkler and David Strauss in Support of Motion for Summary Judgment by Strauss Construction Co., Inc., Exh. 3, at 35, filed Sept. 25, 1986 (hereinafter cited as "Declaration of Strauss") (emphasis added).

On September 7, 1984, Payne telephoned Strauss, telling him that he understood Strauss Construction was a signatory to the Laborers' Master Agreement in Northern California. Strauss replied by letter dated September 7, 1984, stating, "we do not believe that we are signatory to a collective bargaining agreement with your organization." Declaration of Strauss, Exh. 3, at 34. Strauss Construction also included a copy of the September 4, 1984, letter from its attorneys.

The Union filed a second grievance against Strauss Construction on September 17, 1984, concerning the usage of non-union subcontractors. On January 22, 1986, a Board of Arbitration proceeding was held concerning the two grievances. Counsel for Strauss Construction made a special appearance. Counsel stated that Strauss Construction had repudiated the Agreement and, therefore, the Board of Arbitration had no jurisdiction to hear the action or the grievances. Only the Union presented evidence, which indicated that Strauss Construction signed the Agreement on July 1, 1980. Trust fund reports from 1980 to 1982 indicated that, at most, Strauss Construction hired two employees in January and February 1980. At all other times, Strauss employed one or no laborers in Northern California. Specifically, Strauss Construction employed no laborers between August 17, 1984, and September 16, 1984, when the repudiations were made orally and in writing.

Strauss Construction submitted no evidence at the arbitration hearing, and the issue of its repudiation was never reached. The Board of Arbitration decided that six employees, working from September 18, 1984, through October 4, 1985, would be compensated for wages and fringe benefits under the Agreement. Strauss Construction timely filed a petition requesting the Court to vacate the award on April 17, 1986. The Union responded by filing an action requesting confirmation of the award. The Court consolidated the cases for discovery and trial.

## II

### A

The test in a motion for summary judgment is whether, with respect to any dispositive issue, there is any genuine issue as to any material fact and, if not, whether viewing the evidence and inferences that may be drawn therefrom in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law. *United Brotherhood of Carpenters, Local 2247 v. Endicott Enterprises, Inc.,* 806 F.2d 918, 922 (9th Cir.1986); *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.,* 746 F.2d 557, 561 (9th Cir.1984). Summary judgment should be entered against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrell*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A material issue in dispute is whether Strauss Construction signed the Agreement, thereby being a party to the Laborers' Master Agreement in Northern California. No evidence has been submitted to this Court that Strauss Construction did sign the Agreement. However, for this summary judgment proceeding, the Court will assume the existence of a § 8(f) prehire agreement between the Union and Strauss Construction. *Endicott Enterprises*, 806 F.2d at 920 n. 2. Even assuming this fact in favor of the Union, there is no genuine issue of material fact that supports the Union's position.

### B

#### 1.

■ The issues in this case revolve around the question of whether *vel non* Strauss Construction effectively repudiated a § 8(f) prehire agreement with the Union. NLRA, 29 U.S.C. § 158(f) (1982). Section 8(f) allows employers in the construction industry to enter into collective bargaining agreements with a union before the union reaches majority status in the workplace. *See Todd v. Jim McNeff, Inc.*, 667 F.2d 800, 802 (9th Cir.1982), *aff'd*, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983). A prehire agreement is voidable by either party to the agreement only until such time as the union attains majority status in the appropriate bargaining unit. *Id.* Once a union attains majority status support, the § 8(f) prehire agreement becomes a binding collective bargaining agreement under § 9(a) of the NLRA. *International Brotherhood of Electrical Workers, Local Union No. 441 v. KBR Electric*, 812 F.2d 495 (9th Cir.1987.)

■ The Union challenges this Court's jurisdiction to decide the issue of majority status, suggesting that under the doctrine of primary jurisdiction issues of representation should be determined first by the National Labor Relations Board ("NLRB"). Thus, the Union argues that this Court may not make a finding of repudiation unless and until the NLRB determines whether the Union had majority status at Strauss Construction's workplace. This argument fails on two counts.

First, the Ninth Circuit has held that the doctrine of primary jurisdiction does not apply in determining a union's *past* representational status. *Todd*, 667 F.2d at 804. Because the NLRB has no apparatus for determining a union's past status, this Court may determine the issue of the Union's past majority status among Strauss Construction employees. *Endicott Enterprises*, 806 F.2d at 921.

■ Second, the Ninth Circuit has also held that when presentation of the issue to the NLRB would be futile, that is, the NLRB would not make a decision on the matter, the issue of representation by the Union can be made in a proceeding in the district court, authorized under § 301 of the LMRA, 29 U.S.C. § 185(a). *John S. Griffith Construction Co. v. United Brotherhood of Carpenters*, 785 F.2d 706 (9th Cir.1986).

In this case, it would have been futile for Strauss Construction to petition the NLRB for an election or a determination of representational status because it had only one or no employees during the relevant time period. According to the Union's own evidence, prior to the time of repudiation, Strauss Construction employed only one or no laborers between August 1981 and January 1982. The Union verbally indicated in the arbitration that Strauss Construction had two employees in January and February of 1980. Yet, the Union claims that Strauss Construction signed the Agreement on July 1, 1980, and, thus, these two employees were not subject to the Agreement. Therefore, according to the evidence presented by the Union and viewed in the light most favorable to it, at all relevant times prior to the repudiation, Strauss Construction employed one or no employees in Northern California. As stated in *Griffith Construction*, the NLRB

declines to make a determination of representational issues when the employee unit has less than two members. 785 F.2d at 709. Thus, this Court has jurisdiction under § 301 to decide that the Union never attained majority status among Strauss Construction's employees because Strauss Construction employed only one laborer at most during the relevant time.

2.

Either party may repudiate a § 8(f) prehire agreement before the union attains majority status among the employees. *Todd,* 461 U.S. at 271, 103 S.Ct. at 1759. The Supreme Court left open the question of what would constitute an effective repudiation of a prehire agreement in *Todd,* but stated that "sending notice to the union, engaging in activity overtly and completely inconsistent with contractual obligations, or ... precipitating a representation election ... that shows the union does not enjoy majority support" might constitute repudiation of a prehire agreement. *Id.* at 270–71 n. 11, 103 S.Ct. at 1759 n. 11.

The Ninth Circuit, however, has held that there are three distinct methods by which an employer can repudiate a prehire agreement: (1) by calling for a repudiation election to show that the union does not enjoy majority support; (2) by giving actual notice (written or oral) to the union; or (3) by engaging in conduct so overtly inconsistent with contractual obligations that it is sufficient to put the union on notice of the employer's intent to repudiate. *Carpenters Southern California Administrative Corp. v. J.L.M. Construction Co.,* 809 F.2d 594, 598 (9th Cir.1987); *KBR Electric,* 812 F.2d at 498. Furthermore, in a single employee situation, an employer may repudiate a prehire agreement "by conduct sufficient to put the union and the employee on notice that the agreement has been terminated." *Beck Engineering,* 746 F.2d at 566.

The Union directs the Court's attention to the recent NLRB decision in *John Deklewa & Sons v. International Ass'n of Bridge Workers,* 282 N.L.R.B. 184 (1987). In this case, the NLRB formally overruled two of its previous cases, *R.J. Smith Construction Co.,* 191 N.L.R.B. 693 (1971), *enforcing denied sub nom.,* and *Ruttmann Construction Co.,* 191 N.L.R.B. 701 (1971), by holding that, *inter alia,* when parties enter into a § 8(f) agreement, they will be required, by virtue of §§ 8(a)(5) and 8(b)(3), to comply with that agreement unless the employees vote, in a Board–conducted election, to reject (decertify) or change their bargaining representative. Neither employers nor unions who are party to § 8(f) agreements will be free unilaterally to repudiate such agreements. *Deklewa, supra.*

Therefore, the Board held that Deklewa could not repudiate the § 8(f) prehire agreement, regardless of whether or not the union had attained majority status. The prehire agreement could only be terminated before its expiration by an employee decertification election. The NLRB held that this was more consistent with the legislative purpose of § 8(f) and helped preserve employee free choice and labor relations stability.

Regardless of the effect this decision might have on this area of law in the future, this Court is not bound by this decision, but must instead follow the law as pronounced in *Todd, supra,* and the law of the Ninth Circuit. Furthermore, even if the *Deklewa* opinion were the law, it completely fails to address the single-employee situation. It is futile and unrealistic to expect the NLRB to hold decertification elections in a workplace of only one employee. *Griffith Construction,* 785 F.2d at 709. Ninth Circuit cases explicitly hold that single-employee situations are unique and, thus, the employer should be allowed to repudiate a prehire agreement if the union and the employee have sufficient notice of the employer's intent to repudiate. *Beck Engineering,* 746 F.2d at 566. Thus, the *Deklewa* opinion fails to address the instant case, namely, whether a single-employee employer may unilaterally repudiate a prehire agreement by conduct sufficient to put the employee and the union on notice that the agreement has terminated.

As discussed previously, Strauss Construction was at all relevant times a single-

employee employer, and did not have the option to repudiate the Agreement by a decertification election. It would have been futile to petition the NLRB for a representation election in order to repudiate its § 8(f) Agreement because the NLRB will not certify or find appropriate a single-person bargaining unit in a representation proceeding. *Id.* at 565; *Griffith Construction,* 785 F.2d at 709. Therefore, Strauss Construction could effectively repudiate the Agreement by giving actual notice that the Agreement was terminated. *Beck Engineering,* 746 F.2d at 566.

David Strauss clearly and unambiguously repudiated the Agreement. He and his attorneys sent letters to the Union that explicitly repudiated the Agreement at a time when Strauss Construction employed no laborers in Northern California. Thus, the letter of September 4, 1984, was sufficient to put all affected parties on notice that the Agreement was terminated. The repudiation was, therefore, effectively made at a time the contract was voidable.

The Board of Arbitration, which received evidence solely from the Union, found in favor of the Union, and directed that "six employees from September 18, 1984, through October 4, 1985, be compensated for wages and fringe benefits" by Strauss Construction. Declaration of Strauss, Exh. 2. at 32. This award only concerns benefits that accrued after the repudiation of the Agreement on September 4, 1984.

It is appropriate to vacate the arbitration award under a motion for summary judgment. Fed.R.Civ.P. 56. Viewing the evidence in the light most favorable to the Union, Strauss Construction was a signatory to the Agreement. However, the evidence is uncontroverted that Strauss Construction gave notice to the Union that it repudiated the Agreement by sending letters to the Union. According to the Union's own evidence submitted before the Board of Arbitration and in this Court, Strauss Construction was a single-employee employer at the time it was a party to the Agreement, and employed no employees at the time of repudiation. Strauss Construction effectively repudiated the § 8(f) Agreement, and the arbitration award must be vacated. No genuine issue of material fact remains and, therefore, summary judgment is granted in favor of Strauss Construction.

### C

■ The Union argues that the Northern California District Council of Laborers should have been joined in the *Strauss* action and, because Strauss Construction failed to join the Council, the *Strauss* action fails to state a cause of action. There are two major problems with this argument. First, the argument confuses Federal Rule of Civil Procedure 12 with Federal Rule of Civil Procedure 19. Rule 19 provides that a case may be dismissed only when joinder of an indispensable party is not feasible. If joinder is feasible, the court shall order that the absent party be made a party. Failure to join a party is not a ground on which to dismiss a case for failure to state a cause of action under Rule 12.

■ Second, the Union claims that the Northern California District Council is an indispensable party that must be joined; yet the Council is a named plaintiff in the *Union* action. Thus, the Council is already a party in the consolidated suit and there is no reason for the Court to order that it be joined. This argument by the Union is, therefore, irrelevant.

### III

Accordingly,

IT IS HEREBY ORDERED that:

1. Strauss Construction's motion for summary judgment in the *Strauss* action is granted and the Union's cross-motion for summary judgment is denied.

2. The Union's motion for summary judgment in the *Union* action is denied and Strauss Construction's cross-motion for summary judgment is granted.

3. The award of the Board of Arbitration against Strauss Construction is vacated.

4. The *Strauss* action and the *Union* actions are dismissed.