978 F.2d 717
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
VIER CONSTRUCTION COMPANY, INC., Plaintiff-Appellant,
v.
LOCAL UNION NO. 12 OF THE INTERNATIONAL UNION OF OPERATING
ENGINEERS, AFL-CIO, Defendant-Appellee.
 No. 91-55785.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 8, 1992.*
Decided Oct. 29, 1992.
 
 Before FERGUSON, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Vier Construction Company, Inc., appeals the summary judgment entered in favor of Local Union No. 12 of the International Union of Operating Engineers on Vier's claims for breach of contract and violation of National Labor Relations Act § 8(b)(4), 29 U.S.C. § 158(b)(4). We affirm.
 
 
 3
 * Vier and the Union entered into a pre-hire collective bargaining agreement under NLRA § 8(f), 29 U.S.C. § 158(f) which provides that the parties will "meet and attempt to settle ... grievances and claims of contract violation by direct negotiation between duly authorized representatives of each of the parties." When the union refused to dispatch any more operating engineers to Vier or to issue "inter-district transfers" allowing operating engineers from one union district to work for Vier in another, it did not consult Vier. Vier claims this breached the agreement.
 
 
 4
 At the time, the law in this Circuit was that pre-hire agreements could be repudiated by either party until the union established it represented a majority of employees in a stable work unit. International Bhd. of Elec. Workers v. KBR Elec., 812 F.2d 495, 497 (9th Cir.1987). Repudiation was evidenced by noncompliance with the agreement that was "so bald" as to put the other party on notice of an intent to repudiate, or by "open and notorious acts by one party, known to the other, which [were] inconsistent with the continuance of the contract." United Bhd. of Carpenters & Jointers, Local 2247 v. Endicott Enters., 806 F.2d 918, 922 (9th Cir.1986) (quoting cases), cert. denied, 484 U.S. 850, 913 (1987). After an agreement was repudiated, it was "no longer binding." Operating Eng'rs. Pension Trust v. Beck Eng'g. and Surveying Co., 746 F.2d 557, 566 (9th Cir.1984).
 
 
 5
 The undisputed evidence shows that the Union's conduct manifested repudiation of the agreement. It refused Vier's requests to dispatch operating engineers from the hiring hall and refused to issue "inter-district" transfers. This was openly inconsistent with contractual obligations and bald enough to put Vier on notice of an intent to terminate. Endicott, 806 F.2d at 922. The district court therefore did not err in determining that the Union was not bound by the Short Form Agreement, including the meet and negotiate provision.
 
 
 6
 Vier argues, however, that the rule in effect today should apply--that "pre-hire agreements may not be unilaterally repudiated by either a union or an employer prior to its termination or absent an election among the appropriate bargaining unit's employees to reject the union." Mesa Verde Constr. Co. v. Northern California District Council of Laborers, 861 F.2d 1124, 1137 (9th Cir.1988) (en banc) (Mesa Verde II ) (adopting rule of Deklewa v. International Ass'n. of Bridge, Structural and Ornamental Ironworkers, 282 N.L.R.B. No. 184, 1986-87 NLRB Dec. (CCH) P 18,549 (Feb. 20, 1987), enforced, 843 F.2d 770 (3d Cir.1988), cert. denied, 488 U.S. 889 (1988)). Vier argues that even though we have held that Deklewa should not be applied retroactively, see Mesa Verde Constr. Co. v. Northern California District Council of Laborers, 895 F.2d 516, 517 & 520 (9th Cir.1989) (Mesa Verde III ), cert. denied, 111 S.Ct. 209 (1990), the facts in this case dictate a different result. Mesa Verde III declined to give Deklewa retroactive effect because it would penalize acts that were legal when done, it would penalize actions taken without the means to test the union's majority status, and--applied only after "the relationship between the parties has been terminated"--it would "only questionably" serve the statutory objectives of labor relations stability and employee free choice. Id. at 519-20. Vier argues that this reasoning does not apply here because the Union's ability to test its majority status would not be affected by retroactive application and because retroactive application here actually would advance the statutory objectives. We disagree because the circumstances here for the most part match those identified in Mesa Verde III: the Union took actions which were legal when taken, and the statutory objectives of labor stability and employee free choice cannot effectively be served eight years after the sundering of the relationship at issue.
 
 
 7
 Vier argues that even if pre-Deklewa law applies, it does not authorize the Union to repudiate the pre-hire agreement because the Union has identified no case where a union rather than an employer was allowed to repudiate the agreement; no case has allowed a union to repudiate a pre-hire agreement when its doing so was in bad faith and for an improper purpose; and allowing repudiation would not serve the statutory objectives. We have, however, said that either party can repudiate. See KBR Elec., 812 F.2d at 497 ("Pre-hire agreements can be repudiated by either party...."); Endicott, 806 F.2d at 921 ("A prehire agreement is voidable at either party's option...."). Although Vier presented evidence that the Union's refusal to dispatch operating engineers was intended to coerce the Koll Company to bargain with the union and thus was potentially violative of the NLRA, this type of improper motive should be analyzed as an unfair labor practice under the NLRA § 8(b)(4), and not under the rubric of breach of contract. Finally, Vier offers no reason why permitting unions, like employers, to repudiate pre-hire agreement fails to serve or contravenes the goals of labor stability and employee free choice.
 
 
 8
 Vier argues that the equities demand a different result where the non-repudiating party stands to suffer economic loss as a direct result of the failure of the repudiating party to follow the agreed termination procedures. We are not persuaded by this point, because economic harm of some kind will attend almost any repudiation.
 
 II
 
 9
 Vier argues that the district court erred in applying the "ally doctrine" to foreclose its claim for violation of NLRA § 8(b)(4). Vier argues that the doctrine cannot apply where there is no strike or threatened strike, where the primary employer does not employ union workers whom the secondary employer could replace in a strike, or where the union does not otherwise have any relations with the primary employer.
 
 
 10
 Vier does not raise a triable issue that its operating engineers were not used by Koll to withstand the labor dispute it had with the Union. Even though "[t]he word 'ally' has a narrow, specialized meaning, referring to an employer who 'knowingly does work which would otherwise be done by the striking employees of the primary employer,' " General Teamsters Local 659 v. NLRB, 743 F.2d 734, 736 (9th Cir.1984) (quoting NLRB v. Business Mach. and Office Appliance Mechanics Conference Board, Local 459, 228 F.2d 553, 559 (2d Cir.1955), cert. denied, 351 U.S. 962 (1956)), applicability of the doctrine turns on displacement of workers who would otherwise be employed by the primary. There is no evidence this did not happen in this case.
 
 
 11
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3