979 F.2d 855
 148 L.R.R.M. (BNA) 2320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
JERVIS B. WEBB CO., Respondent.
 No. 91-70509.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1992.
Decided Nov. 17, 1992.
 
 Before SNEED, ALARCON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board ("NLRB") seeks enforcement of its order against Jervis B. Webb ("Webb"), ordering Webb to provide information about another company, Jervis B. Webb Company of California ("Webb-California"), to a local union. Enforcement is granted.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 Webb manufactures and installs conveyer systems. In 1970, Webb and the United Brotherhood of Carpenters and Joiners of America ("International Union") executed a document, the Standard International Agreement ("SIA"), under which Webb agreed to "work the hours, [and] pay the wages" of the local unions when Webb worked in their jurisdictions, and not to subcontract work to nonunion entities.[1] This document did not have a termination date or otherwise provide for termination. The purpose of the SIA was to allow Webb to work at various job sites around the country without having to bargain separately with each local union. However, Webb had to sign local bargaining agreements in some instances.
 
 
 4
 In mid-1987, a local carpenter's union, Local 1827, told Webb about an upcoming project at Round Mountain, Nevada. In mid-1987, Webb-California, which is not a signatory to the SIA, won the bid and began working on the Round Mountain project, which was in the jurisdiction of Local 1827. Webb-California did not sign an agreement with the local union, and subcontracted work to nonunion companies on this project.
 
 
 5
 On August 15, 1988 the International Union sent a revised SIA to "all signatories" to the SIA (including Webb), and stated that signatories who failed to execute the revised version within 60 days (i.e. by October 14, 1988) would no longer be considered active signatories to the SIA agreement after they completed projects in progress. Webb did not execute the revised SIA.
 
 
 6
 On September 8, 1988, Local 1827 notified Webb that it was filing a grievance against it because the local union believed Webb had violated the SIA by subcontracting work to non-union labor at Round Mountain. Webb responded that it was not working on a project in Nevada. On October 3, 1988, Local 1827 wrote Webb, stating its belief that Webb and Webb-California were "in fact one and the same company." The local union asked Webb to complete a questionnaire on the relationship between Webb and Webb-California in order to facilitate Local 1827's grievance. Webb has refused to comply with this request, which is the subject of this dispute.
 
 
 7
 The Local 1827 filed an administrative complaint alleging that Webb is a party to a collective bargaining agreement pursuant to Section 8(f) of the National Labor Relations Act (29 U.S.C. § 158(f)), and that Webb violated Section 8(a)(1) and (5) of the Act by failing to bargain (i.e. by failing to provide the requested information). The Administrative Law Judge found that Webb was under no obligation to bargain with Local 1827 because the record did not show the two companies were interrelated for the purpose of the Act, and Webb itself did not employ workers at Round Mountain. The NLRB disagreed with the ALJ, and found Webb had violated Section 8(a)(1) and (5) by refusing to provide the requested information to the local union. The NLRB ordered Webb to respond to the union's request for information, and now seeks enforcement of that order. We hereby enforce the order.
 
 II.
 STANDARDS OF REVIEW AND JURISDICTION
 
 8
 The Board had jurisdiction pursuant to Section 10(a) of the National Labor Relations Act, as amended (29 U.S.C. § 160(a)). This panel has jurisdiction under 29 U.S.C. § 160(e). Decisions of the NLRB will be upheld on appeal if its findings of fact are supported by substantial evidence, and if it has correctly applied the law. NLRB v. O'Neill, 965 F.2d 1522, 1526 (9th Cir.1992).
 
 III.
 DISCUSSION
 
 9
 A. The SIA is enforceable despite its lack of termination date.
 
 
 10
 The SIA is enforceable despite its lack of a termination date because contracts lacking termination dates are generally considered voidable upon reasonable notice, but not void. 1 Williston on Contracts, Third Edition, § 39. In addition, the National Labor Relations Act anticipates that § 8(f) contracts (so-called "pre-hire" agreements that specifically cover employers in the building and construction industry) sometimes do not have termination dates and provides a means in § 8(d) to terminate such contracts.[2] Boeing Airplane Co. v. Aeronautical Indus. Dist. Lodge No. 751, 91 F.Supp. 596, 603 (W.D.Wash.1950), aff'd, 188 F.2d 356 (9th Cir.), cert. denied, 342 U.S. 821 (1951) ("Congress expressly considered and provided for the termination of a contract containing no expiration date.").
 
 
 11
 Webb contends that the Board's ruling in John Deklewa & Sons, 282 N.L.R.B. 1375, review denied, enforcement granted, 843 F.2d 770 (3rd Cir.), cert. denied, 488 U.S. 889 (1988), requires a finding that this language in § 8(d)(1) about how to terminate an agreement without an expiration date no longer applies to § 8(f) agreements. In Deklewa, the Board fundamentally changed the law of § 8(f) agreements, and rejected the then-held view that a § 8(f) agreement was "merely a nonbinding and unenforceable preliminary step to the ultimate establishment of a collective-bargaining agreement," which could be unilaterally repudiated at will prior to the union's attainment of majority status. Id. at 1381. After Deklewa, parties who make a § 8(f) agreement cannot unilaterally repudiate it during the term of the contract. However, when a § 8(f) agreement expires, either party may repudiate the relationship notwithstanding the union's majority status.[3]
 
 
 12
 Webb argues that a duration term is therefore especially critical to a post-Deklewa § 8(f) agreement. McLean County Roofing, 290 N.L.R.B. 685, 686 (1988) (holding that failure to execute agreement did not constitute violation of § 8(a)(1) and (5): "The absence of such an agreement [on termination date] is particularly critical here, in an 8(f) relationship, when the Union's access to the provisions of Section 8(a)(5) can only be secured from, and is limited to, the duration of a valid 8(f) agreement.") However, the cases that Webb cites merely consider the absence of a termination date as one of many factors leading to a conclusion that an agreement was never actually entered. Id. at 686; Springfield Elec. Serv. Co., 285 N.L.R.B. 1305 (1987); Interprint Co., 273 N.L.R.B. 1863, 1865 (1985). They do not hold that an existing agreement, to which the parties had adhered for years, is rendered invalid for lack of a termination date.
 
 
 13
 Webb claims that the lack of termination date shows there was no meeting of the minds on this critical term. However, in the pre-Deklewa context where either party could unilaterally repudiate a § 8(f) contract at will if the union did not have majority status, a termination date would not have been important. In addition, even if, as Webb argues, post-Deklewa § 8(f) agreements should contain a duration term,[4] this agreement was signed pre-Deklewa, and, therefore, should not be construed as unenforceable for lack of a termination date.
 
 
 14
 B. The "one man unit" rule does not justify Webb's refusal to answer questions because the union's questions about the relationship between Webb and Webb-California were of reasonable or probable relevance.
 
 
 15
 Under the "one man unit" rule, an employer does not violate § 8(a)(1) and (5) by refusing to bargain when it is clear that the company employs only one worker in the relevant unit. Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co., 746 F.2d 557, 566 (9th Cir.1984); Stack Elec., Inc., 290 N.L.R.B. 575, 577 (1988); Garman Constr. Co., 287 N.L.R.B. 88, 89 (1987); Crescendo Broadcasting, Inc., 217 N.L.R.B. 697, 698 (1975). Webb argues that even if the SIA was a valid § 8(f) agreement, Webb employed no one at Round Mountain or in Nevada, and, thus, under the "one-man unit" rule, it had no obligation to bargain or supply information. Garman Constr. Co., 287 N.L.R.B. at 89. Webb misses the point. The local union's theory is that Webb and Webb-California are "one and the same" company for the purpose of § 8(a)(1) and (5). Should this theory be borne out, then employees of Webb-California at Round Mountain will count as Webb employees for the purpose of the "one-man unit" rule.
 
 
 16
 While there is nothing in the record to show how many Webb-California employees were working at Round Mountain at the time of the dispute, this number is relevant to the "one man unit" analysis. None of the cases which Webb cites involve the "alter ego" theory which the local union is pursuing. Moreover, there is sufficient evidence of an interrelationship between Webb and Webb-California to sustain the union's questions to Webb. When a union requests information about employees outside the represented bargaining unit in an effort to ultimately show a "single employer" or "alter ego" relationship, it must show that the questions are of "reasonable or probable relevance." Barnard Eng'g Co., 282 N.L.R.B. 617, 619 (1987).[5]
 
 
 17
 Two facts indicate that the local union's questions were of reasonable or probable relevance. First, there is the striking similarity in corporate names ("Jervis B. Webb Company" and "Jervis B. Webb Company of California"). Second, the record shows that a Webb employee in Michigan signed a labor agreement on behalf of Webb-California for a different project in Nevada. This indicates possible common management or centralized control of labor relations.
 
 
 18
 C. Webb is still obligated to provide the requested information to the union despite the October 14th termination of the SIA.
 
 
 19
 Webb next contends that its bargaining relationship with the International Union and the local union ended on October 14, 1988, sixty days after the International Union's August 15th letter to Webb which contained the revised SIA. Thus, Webb argues that no duty to bargain (which includes the duty to supply information) existed after October 14th. The obligation to bargain, however, survives contract termination when the dispute is over an obligation arguably created under the expired agreement. Nolde Bros., Inc. v. Bakery Workers, 430 U.S. 243, 252 (1977). In Litton Fin. Printing Div. v. NLRB, 111 S.Ct. 2215 (1991), the court emphasized that Nolde Bros. only applies where the dispute has its real source in the contract, for example, when it involves facts and occurrences that arose before expiration. Id. at 2218. The allegedly illegal hiring practice occurred in mid-1987, and the local union both notified Webb of its grievance and requested the information about Webb-California before the October 14th termination date. Indeed, even if the information request had come after the termination date, Webb would still be obligated to respond. Audio Eng'g, Inc., 137 L.R.R.M. (BNA) 1129, 1131 (1991) (union request for employer information to enable it to police compliance with a collective-bargaining agreement). Therefore, Webb cannot refuse to answer questions based on the October 14th termination of the SIA.
 
 
 20
 D. Signing agreements with local bargaining units is not a repudiation in this case.
 
 
 21
 Lastly, Webb argues that by requiring it to sign local bargaining agreements, the local unions, in effect, repudiated the SIA, the supposed benefit of which was to allow Webb to work at job sites across the country without negotiating individually with each local union. It is true that a party's subsequent conduct can effectively repudiate a collective bargaining agreement when the conduct is unambiguous. Local 302, Int'l Union of Operating Eng'rs v. West, 882 F.2d 399, 401 (9th Cir.1989) (holding that inconsistent conduct--oral denial of agreement and hiring of some union employees--was not unambiguous, and thus no repudiation took place); Int'l Bhd. of Elec. Workers, Local Union No. 441 v. KBR Elec., 812 F.2d 495, 498-99 (9th Cir.1987) (employer sent letter announcing intention to end contract, represented itself as non-union employer, bypassed hiring hall, paid non-union wages, thus repudiated § 8(f) agreement). Here, however, we do not have the kind of unambiguous conduct that a repudiation requires. First, we only know that, in some instances, local unions required Webb to sign their agreements. Second, the local unions may have required Webb to sign their agreements for many reasons. This conduct hardly rises to an "unambiguous" repudiation of the SIA by the local unions.
 
 
 22
 We hereby enforce the NLRB's order requiring Webb to answer the local union's questionnaire concerning the relationship between Webb and Webb-California.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The SIA states in relevant part:
 "The Company agrees to recognize the jurisdictional claims of the United Brotherhood of Carpenters and Joiners of America, to work the hours, pay the wages and fringe benefits and observe the lawful working conditions (including lawful union shop agreements) established or agreed upon by the United Brotherhood of Carpenters and Joiners of America and the recognized agency of the locality in which any work of the Company is being done, with respect to journeymen carpenters employed by the Company.
 The Company will not subcontract any work [to non-union labor]."
 
 
 [2]
 Section 8(d) of the N.L.R.A. (29 U.S.C. § 158(d)) states in relevant part:
 "[W]here there is in effect a collective-bargaining contract ..., the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination ...
 (1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification; and
 (4) continues in full force and effect ... all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later." (emphasis added).
 
 
 [3]
 Deklewa has been adopted by the Ninth Circuit. Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers, 861 F.2d 1124, 1126 (9th Cir.1988) (en banc). However, the Ninth Circuit does not apply Deklewa retroactively. Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers, 895 F.2d 516, 517 (9th Cir.1989), cert. denied, 111 S.Ct. 209 (1990) (holding that where company lawfully repudiated § 8(f) pre-hire agreement before Deklewa was decided, court would not retroactively apply Deklewa )
 
 
 [4]
 No court has yet addressed the interrelationship of § 8(d) and § 8(f) in a post-Deklewa world, yet the Deklewa court recognized the importance of this question: "The most difficult question confronting us in modifying the law of 8(f) relationships, however, concerns the degree to which the principles of Sections 8(a)(5), 8(b)(3), 8(d), and 9(a) apply. Deklewa at 1386 (emphasis added)
 
 
 [5]
 In order to decide if Webb and Webb-California are a "single employer" or "alter egos," one must look at four factors: (1) the interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. Carpenters' Local Union No. 1478 v. Stevens, 743 F.2d 1271, 1276 (9th Cir.1984), cert. denied, 471 U.S. 1015 (1985). No factor is controlling, and all need not be present. Id