**MESA VERDE CONSTRUCTION CO., Plaintiff,**

v.

**NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS, Defendant.**

No. C–84–4389–WWS.

United States District Court, N.D. California.

Feb. 11, 1985.

Mark R. Thierman, Deborah E.G. Wilder, Thierman, Simpson & Cook, San Francisco, Cal., for plaintiff.

Victor J. Van Bourg, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for defendant.

## ORDER

SCHWARZER, District Judge.

Defendant Northern California District Council of Laborers (the "Union") has moved, pursuant to Fed.R.Civ.P. 59(e) and 60(b), for alteration, amendment or vacation of this Court's order of December 13, 1984, 598 F.Supp. 1092, granting summary judgment in favor of Mesa Verde Construction Company ("Mesa Verde"). The Union seeks an order denying Mesa Verde's motion for summary judgment, without prejudice, and granting the Union an opportunity to conduct further discovery on the issue of whether or not Mesa Verde's payroll records demonstrate the existence of a core group of employees for purposes of establishing a presumption of majority status. On January 5, 1985, the Union filed an amended motion for alteration, amendment or vacation of judgment, requesting this Court to reconsider three issues addressed by the December 13 order: 1) whether this Court had jurisdiction to determine majority status; 2) whether the 1980 agreement was a "pre-hire" agreement; 3) whether Mesa Verde could repudiate the agreement when it had an on-going project at the time of repudiation.

### A. *Additional Discovery*

The Union argues that summary judgment was premature because a fact issue continues to exist as to whether or not available evidence shows the existence of a core group of employees in Mesa

Verde's work force. According to the Union, it limited its analysis of majority status to the year 1981, rather than considering the entire five year period covered by the agreements with Mesa Verde, because of the supposedly voluminous nature of Mesa Verde's payroll records. It argues that "there is a good possibility" that a core group of employees can be established for the year 1983 or by a combination of years.

A review of the proceedings is appropriate. On July 16, 1984, this Court stayed arbitration of a grievance filed by the Union pending resolution of Mesa Verde's declaratory relief action before this Court. During the argument, the Court asked counsel for the Union whether the case was ready for summary judgment. Counsel responded that there had not been adequate time in which to conduct discovery and therefore summary judgment at that time was improper. The Court then set September 28, 1984, as the date for summary judgment motions to allow time for discovery. The Union was given leave to engage in any needed discovery in the interim.

On August 21, 1984, the Union asked Mesa Verde to produce various payroll and personnel records for inspection and copying at the office of counsel for the Union on August 30, 1984. Mesa Verde agreed to produce payroll ledgers and trust fund reports for the period from June 20, 1980, to May 15, 1984, and to make these documents available for inspection at its corporate offices, but objected to any broader request. This discovery dispute was brought to the Court's attention on August 31, 1984, at the hearing on reconsideration of the order staying arbitration. Counsel for both sides agreed to try to settle the discovery dispute without the assistance of the Court, but their efforts proved unsuccessful.

On September 14, 1984, the Union filed its opposition to Mesa Verde's motion for summary judgment. It stated that it was unable to fully respond to Mesa Verde's allegations concerning majority status since Mesa Verde had failed to provide the Union with the necessary documents pursuant to its document request. At the hearing on the motion on September 28, the Court directed both sides to file supplemental memoranda on the issue of majority status by October 26, 1984. The Court further directed Mesa Verde to make available at Mesa Verde's corporate offices the documents requested by the Union and to have a copy machine available for the Union's use. The Union thus had four additional weeks to accomplish necessary discovery and prepare its supplemental memorandum.

On October 4, 1984, Union's counsel Paul Supton, accompanied by a law clerk, went to Mesa Verde's corporate offices and met with Mesa Verde's counsel. Payroll records and other relevant requested material for the entire five year period were produced. Supton has stated in a declaration filed with the Court that because of the voluminous nature of the material, he decided to limit his majority status analysis to the year 1981. The Union does not dispute that Supton and the law clerk spent only four hours at Mesa Verde's offices reviewing and copying this material.

The Union's attempt to suggest that it misunderstood the crucial issue in discovery to be whether laborers belonged to the union, rather than the stability of the work force, is disinguous at best. In his letter of September 4, 1984, to counsel for Mesa Verde, Victor Van Bourg stated that items in the Union's discovery request were "clearly relevant to Plaintiff's claims that a stable work force never existed and/or that employees were not transferred from one jobsite to another." Thus counsel for the Union was well aware of the critical issue in this case when they made their decision to limit their examination of payroll records to 1981.

Counsel were of course also well aware that they could have sought additional time under Fed.R.Civ.P. 56(f). The Union concedes that it did not do so, but seeks to escape the consequences by relying on *Deiches v. Carpenters' Health and Welfare Fund of Philadelphia,* 572 F.Supp.

766 (D.N.J.1983), for the proposition that a court possesses the discretion to grant such a continuance despite a Rule 56(f) affidavit not having been filed. In *Deiches*, the plaintiff did not file a formal Rule 56(f) affidavit, but requested at oral argument that he be given an adequate opportunity to complete discovery and file affidavits. The Union here made no such request after having been twice afforded such an opportunity, first at the argument on July 16, 1984, and again at the argument on September 28, 1984. It could of course have made a further request at any time prior to December 13, 1984, when the Court issued its order on the summary judgment motions, but did not do so. The *Deiches* court noted, moreover, that "plaintiff's brief fairly implies that the [plaintiff] is not capable of responding to defendant's affidavits without such discovery." *Id.* at 776. By contrast, the Union asserted that it was entirely capable of responding to Mesa Verde's affidavits and statistics on the basis of the discovery conducted. In its Memorandum of Points and Authorities re Majority Status, the Union stated in a footnote, "Defendant submits that the analysis of 1981 demonstrates conclusively that the Union attained majority status among the employer's work force in 1981 and is therefore entitled to a presumption of majority status through the life of the agreement." Memo at p. 16 n. 5.

The Union also claims that it preserved its right to further discovery in its October 26 memorandum (p. 16, n. 5). Buried at the end of a lengthy footnote devoted to the argument that the Union had gained majority status because Mesa Verde hired out of the Union hiring hall is a sentence stating that, "[i]f the Court disagrees, Defendant ... submits that an evidentiary hearing should be conducted for a thorough analysis of the employer's other jobsites in 1982, 1983 and 1984."

That hardly can be construed to be a reservation of rights to renew discovery should the ruling be adverse on the motion. Moreover, such a reservation would be wholly inconsistent with Rule 56. Subsection (e) specifically requires that "[w]hen a motion for summary judgment is made ... an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing that there is a genuine issue for trial." Subsection (f) further provides that if the adverse party "cannot for reasons stated present ... facts essential to his opposition, the court ... may order a continuance to permit ... discovery...." It would be wholly contrary to the letter or spirit of Rule 56 to permit a party to engage in the kind of sandbagging proposed by counsel for the Union. The Rule does not entitle a party unsuccessful in opposing a motion for summary judgment motion to get a second crack at trying to prevail.[1]

## B. *Jurisdiction*

■ The Union asks the Court to reconsider whether it had jurisdiction to determine the issue of majority status. First, it argues that *Laborers Health & Welfare Trust Fund v. Kaufman & Broad of Northern Calif., Inc.*, 707 F.2d 412, 415–416 (9th Cir.1983) "simply has no application whatsoever to the instant case." The Union misreads the language of the

---

**1.** The Court notes that neither now nor in its opposition to the motion prior to the ruling did the Union argue that there was a genuine issue as to any material fact. Their motion simply argues, without any factual support, that "there is a good possibility that a core group of employees can be established...." (Memo. Dec. 21, 1984, pp. 7–8)

The Union also argues that the summaries submitted by plaintiff were unreliable. (Reply Memo Jan. 25, 1985, p. 5) The Union directed these complaints at the summaries and the declaration of Peter Zearbaugh filed by plaintiff on July 10, 1984. Zearbaugh revised his summaries and submitted a Supplemental Declaration on September 20, 1984. The Union asserted in its Reply Memo that the revised summary also deserves no weight and that a determination of the nature of the work force can only be made "through complete and full discovery." (Reply Memo, p. 6). The Union was provided with such an opportunity for discovery, but limited its analysis to the year 1981. Therefore, Mesa Verde's work force data for the remaining years, upon which this Court relied in its ruling, have not been disputed.

Court's order. The point is not whether Mesa Verde is a Trust Fund as in *Kaufman*, but that the primary jurisdiction rule does not apply where a party has no standing to raise the issue before the National Labor Relations Board (NLRB). *Kaufman, supra.* This rule was extended In *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557 at 565 (9th Cir. Nov. 1, 1984), to apply to defenses which could not be presented to the NLRB. The defense raised by Mesa Verde to the Union's charge of breach of a collective bargaining agreement is that the agreement was a voidable pre-hire agreement. The Trust Fund in *Beck* argued, as does the Union here, that a § 8(f) agreement may only be repudiated by means of an NLRB election pursuant to a petition filed by the employer. The court specifically found that it would have been futile for Beck to have filed an election petition because the "NLRB will not certify or find appropriate a single person unit in a representation proceeding." *Id.* at 565. Similarly, it would have been futile for Mesa Verde to have filed an election petition since the NLRB cannot make a bargaining unit determination as to non-existent jobsites nor could an election be held.

Second, the Union attempts to rely on *Daniel Construction Co., Inc.*, 133 NLRB 264 (1961), to support the argument that where employees are hired on a jobsite by jobsite basis, the fact that the representation issue may involve "future jobsites" is irrelevant. *Daniel* does not address the issue of permanent and stable work force and hence is not relevant. In any event, the Union's quotations from it are out of context. It quotes *Daniel* as stating that the plumbers and pipefitters which were the subject of the agreement were hired by the employer "at the jobsites and terminated at the completion of the project," but has failed to quote the full sentence which states:

> While the various projects of the Greenville divisions vary in size and duration, *there is a nucleus of pipefitters and plumbers employed at all times.* These

are hired at the jobsites and terminated at the completion of the project." (emphasis added)

133 NLRB at 265.

As the Court determined in its prior order, defendant failed to establish the existence of such a nucleus of employees here.

The arguments advanced by the Union are little more than an attempt to obfuscate the nature of § 8(f) agreements. There is an "undoubted right to repudiate a prehire agreement before the union attains majority support in the relevant unit...." *Jim McNeff v. Todd*, 461 U.S. 260, 103 S.Ct. 1753, 1759, 75 L.Ed.2d 830 (1983). It is also undisputed that a prehire agreement cannot be repudiated with respect to any job on which the union has a majority. The only issue in this case is whether Mesa Verde could repudiate it as to future jobs. The law is settled that the issue of majority status in that situation is not reached unless and until the employer is shown to have a stable and permanent work force. *Construction Erectors, Inc.*, 265 NLRB 786 (1982). Mesa Verde has shown that it did not, and the Union has come up with no facts to the contrary. Thus the issues raised by the Union concerning the Board's election procedures in the construction industry, including the determination of the appropriate bargaining unit for election purposes are never reached.

## C. *Beyond the Scope of the Pleadings*

■ The Union requests the Court to reconsider its finding that, due to the absence of a permanent and stable work force, any binding collective bargaining relationship established at any jobsite under the 1979 agreement would have no effect on future jobsites. Order at 7. The Union argues that this finding goes beyond the scope of the pleadings and is not supported by record evidence; because Mesa Verde sought declaratory relief only as to the 1980 agreement, the Union did not conduct any discovery nor was any evidence presented with respect to the time period between the signing of the 1979 and 1980 agreements.

Why the Union raises this issue is obscure; the Court did not rely on the 1979 agreement but merely referred to and rejected an argument advanced by the Union. In its Memorandum of October 26, 1984, the Union stated:

The instant litigation involves only the June 26, 1980, agreement, the agreement which Plaintiff purports to have repudiated and as to which Plaintiff seeks declaratory relief from this Court. However, as admitted by Plaintiff in its pleadings (see Supplemental Declaration of Peter Zearbaugh) Plaintiff had Laborer employees on its payroll in 1979 and was making Trust Fund contributions on behalf of those employees in 1979, prior to the signing of the agreement at issue in this case. Those contributions were made pursuant to the 1979 agreement with the Union. *Therefore, a collective bargaining relationship existed between these parties prior to the signing of the 1980 agreement.* (emphasis added).

Memo at 6.

The Union's contention that no evidence was presented with respect to the period between the signing of the 1979 and 1980 agreements is belied by its own statement, quoted above, referring to Mesa Verde's analysis of laborers it employed from August, 1979, to June, 1980. In discovery, Mesa Verde provided pay roll records covering this period, and the Union reviewed them on October 4, 1984. It seems absurd for the Union, having raised the 1979 agreement and characterized it as a binding collective bargaining agreement, to argue that the Court went beyond the scope of the pleadings and the evidence in concluding that the 1979 agreement did not bind future jobsites.

## D. *Timing of Repudiation*

The Union contends that the Court erred in its conclusion that repudiation was effective as to future jobsites, while being ineffective as to the ongoing Lucky Hercules project. It argues that an employer may not repudiate a pre-hire agreement at a time when the Union has attained majority status at any jobsite. Any attempt to repudiate during this time is ineffective as to both ongoing and future jobsites. (Memo Jan. 4, 1985, pp. 9 *et seq.*)

There is no support whatever for this argument in the cases cited or elsewhere, as the prior ruling shows. The argument is based on misleading references to or quotations from cases. For example, in *Land Equipment, Inc.,* 248 NLRB 685, *enforced* 649 F.2d 867 (9th Cir.1981), the NLRB specifically stated:

The record further shows that the Respondent does not hire employees on a project-by-project basis but has a relatively stable complement of employees who move from job to job and who work between jobs in the Respondent's yard performing maintenance and oiling work.... [A]s described by the Administrative Law Judge, the Union achieved majority status in the appropriate unit on August 17, 1977. In such circumstances, the General Counsel did not have the burden of establishing majority support at each jobsite here. Cf. *Dee Cee Floor Covering Inc and its alter ego and/or successor, Dagin-Akrab Floor Covering, Inc.,* 232 NLRB 421 (1977), and other cases where the employer hires employees on a project-by-project basis.

248 NLRB at 685 n. 2

*V M Construction Co., Inc.,* 241 NLRB 584 (1979) is also entirely distinguishable, as reflected in the Board's statement in the opinion:

The repudiation in [*Dee Cee Flooring Covering, Inc.*] occurred between projects, when there was no employee on the payroll. In the present case, on the other hand, there not only were a payroll and a union majority at the time of repudiation, there was a union majority when the memorandum agreement was entered into, removing the situation from conventional 8(f) analysis. Beyond that, the appropriateness of a multiproject unit is established by the pleadings, obviating an assessment of majority at each project separately; by employee inter-

change among overlapping projects and carryover from completed to new projects; and by the non-segregation, by project, of payroll records.

*Id.* at 587.

The Union's contention is squarely contrary to the Ninth Circuit decision in *NLRB v. Pacific Erectors, Inc.,* 718 F.2d 1459 (9th Cir.1983), *affirming Pacific Erectors, Inc.,* 256 NLRB 421 (1981). The court held that an employer who repudiated a pre-hire agreement during the course of a particular construction project continued to be bound by it on that project until its completion. The court stated that "where an employer has no stable work force and hires on a job-to-job basis" the union "must demonstrate its majority status at each new jobsite in order to invoke the provision of section 8(a)(5) of the Act." *Id.* at 1463. In *Pacific Erectors, Inc.,* the employer hired on a job-by-job basis and the union attained majority status at the Tualatin jobsite. The Board's ruling limits the employer's obligations under the agreement to that site. See *Pacific Erectors, Inc.,* 256 NLRB at 421–422.

For the reasons stated above, the Union's motion to alter, amend or vacate the Court's order of December 13, 1984, is denied.

IT IS SO ORDERED.