820 F.2d 1006
 125 L.R.R.M. (BNA) 2849, 56 USLW 2043,
106 Lab.Cas. P 12,429
 MESA VERDE CONSTRUCTION CO., Plaintiff-Appellee,
v.
NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS,
Defendant-Appellant.
MESA VERDE CONSTRUCTION COMPANY, Plaintiff-Appellee,
v.
CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD,
Defendant- Appellant.
 Nos. 85-1665, 85-2074.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 14, 1986.
Decided June 23, 1987.
 
 Mark R. Thierman and Paul V. Simpson, San Francisco, Cal., for plaintiff-appellee.
 Victor J. Van Bourg and Sandra Rae Benson, San Francisco, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before NELSON, WIGGINS and NOONAN, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Mesa Verde Construction Company (Mesa Verde) brought actions against the Northern California District Council of Laborers (Laborers) and the Carpenters 46 Northern California Counties Conference Board (Carpenters) seeking a declaration that it was not obligated to arbitrate grievances under the terms of its respective collective bargaining agreements with the unions. Mesa Verde also sought a stay of arbitration proceedings initiated by the Laborers pending resolution of the declaratory judgment action. The district court stayed the arbitration proceeding and ultimately granted Mesa Verde summary judgment in both actions. We affirm.
 
 BACKGROUND
 
 2
 Mesa Verde is a general contractor, specializing primarily in constructing shopping centers in Arizona, California, and Colorado. Mesa Verde typically subcontracts out most of its work except for some carpentry and odd jobs. In 1979 it reached its first agreement with the Laborers, and on June 26, 1980 it signed the contract with the Laborers that is here in dispute. The contract was to remain in effect until June 15, 1983 and would continue thereafter from year to year absent written notice by either party. By the contract's terms Mesa Verde agreed to "comply with all wages, hours, and working conditions set forth in the Laborers' Master Agreement for Northern California." That agreement is a sixty-seven-page contract between the Laborers, the Associated General Contractors of California, Inc. and the Bay Counties General Contractors Association. It sets wage rates for numerous jobs and provides for arbitration, with certain exceptions, of "any dispute concerning the interpretation or application of the agreement." On November 17, 1982 Mesa Verde and the Laborers agreed in writing that their 1980 contract would continue in effect until June 15, 1986.
 
 
 3
 Mesa Verde first entered into a collective bargaining agreement with the Carpenters in August 1979. Through a memorandum agreement Mesa Verde and the Carpenters accepted the Carpenters Master Agreement for Northern California, a forty-nine-page contract between the Carpenters, the Building Industry Association of Northern California, the California Contractors Council, Inc. and the Millwright Employers Association. That agreement sets rates for numerous jobs and provides for arbitration of "[a]ny dispute concerning the relationship of the parties, any application or interpretation of this Agreement." Through a subsequent memorandum agreement executed in June 1980 the parties accepted the new June 16, 1980 to June 15, 1983 Carpenters Master Agreement. On September 8, 1982 Mesa Verde and the Carpenters early extended the master agreement to June 15, 1986, with certain modifications limiting wage increases and providing more flexible working conditions for Mesa Verde.
 
 
 4
 Mesa Verde informed the unions of its intent to abrogate its agreements with them in May of 1984. At the time Mesa Verde was working on a project in Hercules, California, at which it employed members of both unions. Mesa Verde notified the Carpenters of its repudiation through a May 8, 1984 letter and notified the Laborers through a May 15, 1984 letter. In late May or early June of 1984, after its notice to the unions, Mesa Verde started another project in Orland, California without union workers, in contravention of the collective bargaining agreements, if they were still in effect. Both unions gave Mesa Verde notice of grievance and requested arbitration regarding Mesa Verde's contractual obligations for the Orland project. Mesa Verde then brought suit against both unions seeking a declaration that it need not comply with the agreements with regard to projects begun after its repudiations in May 1984. Mesa Verde did not seek a declaration of its obligations to the unions at the ongoing Hercules project.
 
 
 5
 The district court stayed the Laborer's arbitration proceeding pending resolution of the declaratory judgment action and later granted Mesa Verde summary judgment. Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers, 598 F.Supp. 1092 (N.D.Cal.1984). The court, in an unpublished opinion, also granted Mesa Verde summary judgment against the Carpenters. The court held that the collective bargaining agreements at issue were construction industry "prehire" agreements and that therefore, under 29 U.S.C. Sec. 158(f), Mesa Verde's May 1984 letters were sufficient to effectively repudiate the agreements with respect to future projects. The court denied a subsequent motion of the Laborers to vacate its judgment and grant the Laborers additional discovery to demonstrate the existence of a core group of employees. 602 F.Supp. 327 (N.D.Cal.1985).
 
 
 6
 The unions in this consolidated appeal contest the following: (1) the district court's jurisdiction; (2) the court's stay of arbitration proceedings; and (3) the court's holding that Mesa Verde effectively repudiated its agreements with the unions as to future projects.
 
 ANALYSIS
 I. JURISDICTION
 
 7
 We review the district court's determination of its subject matter jurisdiction de novo. Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 549 (9th Cir.1984). The unions first argue that the resolution of this case requires determinations of issues within the primary jurisdiction of the National Labor Relations Board (NLRB). However, the determination of repudiation of a pre-hire agreement is not within the NLRB's primary jurisdiction, and the district court had jurisdiction to declare whether Mesa Verde repudiated. Northwest Adm'rs, Inc. v. Con Iverson Trucking, Inc., 749 F.2d 1338, 1340 (9th Cir.1984); accord John S. Griffith Constr. Co. v. United Bhd. of Carpenters & Joiners, 785 F.2d 706, 710 (9th Cir.1986). The court also had jurisdiction to determine the effectiveness of the repudiations. Although this determination involved an employee representational issue usually within the primary jurisdiction of the NLRB--whether Mesa Verde had a "permanent and stable" work force, the majority of which supported the unions, see infra section III--the district courts have jurisdiction to determine "a union's past representational status." United Bhd. of Carpenters & Jointers Local 2247 v. Endicott Enters., 806 F.2d 918, 921 (9th Cir.1986). The district court in this case determined Mesa Verde's work force status for the period prior to its May 1984 repudiations; its jurisdiction thus falls within the past representational status exception recognized by Endicott.
 
 
 8
 The unions also argue that their respective collective bargaining agreements with Mesa Verde required that the issue of Mesa Verde's repudiation be resolved through arbitration and not by the district court.[1] This court in Ion Construction Co. v. District Council of Painters No. 16, 803 F.2d 1050, 1051 (9th Cir.1986), recently stated the rule "that, as between the court and an arbitrator, it is the former that should determine the effectiveness of an employer's alleged repudiation of a prehire agreement." The rationale for this rule is that "[i]f the Court finds that the employer's repudiation was effective, then there is no longer any agreement to arbitrate disputes between the parties." Griffith Constr., 785 F.2d at 712 n. 5 (quoting Ion Constr. Co. v. District Council of Painters No. 16, 593 F.Supp. 233, 238 (N.D.Cal.1984), aff'd, 803 F.2d 1050 (9th Cir.1986)). Ion Construction and Griffith Construction control this case.[2]
 
 
 9
 The district court had jurisdiction to determine both whether Mesa Verde repudiated its collective bargaining agreements with the unions and whether, based on the union's representational status during the period before the repudiations, the repudiations were effective.
 
 II. STAY OF ARBITRATION PROCEEDINGS
 
 10
 The Laborers argue that the district court's stay of arbitration proceedings pending final disposition of the declaratory judgment action constituted a restraining order of a labor dispute in violation of the Norris-LaGuardia Act, 29 U.S.C. Sec. 101. The Laborers do not say, and we cannot see, how the stay, even if erroneous, affected the final judgment of the district court. Even if the district court had permitted arbitration to continue and the Laborers obtained a favorable arbitration award prior to summary judgment, an award resolving issues properly within the district court's jurisdiction would have had no preclusive effect on the district court. See Ion Constr. Co., 803 F.2d 1050 (vacating arbitration award resolving issue within district court's and not arbiter's jurisdiction). Because the stay by its own terms was lifted upon final disposition of the declaratory judgment action, this court has available no effective relief to redress the alleged error. We therefore sua sponte reject the Laborer's argument as moot. See AcGuirre v. S.S. Sohio Intrepid, 801 F.2d 1185, 1189 (9th Cir.1986).
 
 III. REPUDIATION
 
 11
 Pre-hire agreements are specially recognized collective bargaining agreements in the construction industry. These agreements provide an exception to the general rule that an employer may not bargain with unions that do not enjoy the support of the majority of workers in the bargaining unit. See 29 U.S.C. Sec. 158(f). An employer may negotiate a pre-hire agreement with a non-majority union, but either party may repudiate the agreement until the union achieves majority support in the appropriate employee bargaining unit, transforming the pre-hire agreement into a fully binding collective bargaining agreement. United Bhd. of Carpenters & Jointers Local 2247 v. Endicott Enters., 806 F.2d 918, 920-21 (9th Cir.1986). The method of establishing a union's majority support depends on the nature of the work force covered by the agreement:
 
 
 12
 This circuit recognizes two methods of demonstrating majority status. If the agreement covers a permanent and stable unit of employees, the contract is converted into a binding agreement covering all employees from the time the union establishes majority support. Once a majority of the company's employees belong to the union, a rebuttable presumption of the union's majority status is created.
 
 
 13
 If an employer has no stable work force and hires on a job-to-job basis, "the employer's duty to bargain and honor the contract is contingent on the union's attaining majority support at the various construction sites."
 
 
 14
 NLRB v. Pacific Erectors, Inc., 718 F.2d 1459, 1463 (9th Cir.1983) (citations omitted) (quoting NLRB v. Local Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, 434 U.S. 335, 345, 98 S.Ct. 651, 657, 54 L.Ed.2d 586 (1978)); accord International Bhd. of Elec. Workers, Local 441 v. KBR Elec., 812 F.2d 495, 497-98 (9th Cir.1987).
 
 
 15
 The district court, relying on Mesa Verde's payroll records, determined the composition of Mesa Verde's laborer and carpenter work forces at the various projects covered by its respective agreements with the unions. Based on these figures the district court concluded that Mesa Verde's work force was not permanent and stable but rather that Mesa Verde hired the unions on a job-by-job basis. The district court therefore granted Mesa Verde summary judgment, holding that its letters to the unions effectively repudiated its collective bargaining agreements with them as to projects started after the dates of repudiation.
 
 
 16
 We review the district court's grant of summary judgment de novo, to determine whether there are no genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co., 746 F.2d 557, 561 (9th Cir.1984); Fed.R.Civ.P. 56(c).
 
 A. Project-by-Project Hiring
 
 17
 The unions raise several objections to the district court's holding that Mesa Verde hired on a project-by-project basis. The Laborers contend a genuine, material issue of fact existed as to Mesa Verde's laborer work force composition during the relevant years and that summary judgment was therefore inappropriate. Both unions also argue that even assuming the correctness of the work force compositions the district court erred as a matter of law in holding that Mesa Verde hired on a project-by-project basis.
 
 
 18
 The Laborers argue that Mesa Verde's payroll records are unreliable and do not meet Mesa Verde's initial burden of establishing the absence of any factual genuine issue as to the composition of its work force. See generally British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir.1978) (initial burden of establishing no genuine factual issue lies with party moving for summary judgment), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). We disagree. The payroll evidence is credible and, if uncontroverted by the Laborers with specific evidence, could lead to "but one reasonable conclusion" by the fact finder as to the composition of Mesa Verde's work force. See generally Anderson v. Liberty Lobby, Inc., --- U.S. ----, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (no genuine issue exists when there is "but one reasonable conclusion as to the verdict").
 
 
 19
 Because Mesa Verde established that no genuine factual issue existed as to its work force composition, the burden shifted to the Laborers to present "specific facts showing that such contradiction is possible." British Airways, 585 F.2d at 951. The Laborers' mere assertions in their legal memoranda were insufficient to meet this burden and establish a genuine factual issue. Id.; S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir.1982).
 
 
 20
 The Laborers argue that they were unable to present specific evidence in opposition because the district court provided them insufficient time to complete discovery. We review the district court's decision to limit discovery for abuse of discretion. Hatch v. Reliance Ins. Co., 758 F.2d 409, 416 (9th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985). The discovery proceedings are described in the opinion of the district court, 602 F.Supp. at 328-30, and we do not recount them. Given the Laborers' access to the relevant documents at least during the district court's four-week discovery extension, and their failure to formally move the court under Fed.R.Civ.P. 56(f) for a further extension, we cannot say that the district court abused its discretion in denying the Laborers further time to review the documents. The latter failure alone is a proper ground for denying discovery and proceeding to summary judgment. Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir.1986).[3]
 
 
 21
 The unions argue that even if the district court properly determined the work force compositions on summary judgment it erred in holding that Mesa Verde hired laborers and carpenters on a project-by-project basis. We agree with Judge Schwarzer's well-reasoned analysis that as a matter of law Mesa Verde's laborer work force was not permanent and stable. 598 F.Supp. at 1097-99; see also KBR Elec., 812 F.2d at 498 (summary judgment resolving work force issue on uncontroverted facts). With regard to the Carpenters, the record shows that Mesa Verde employed 110 carpenters on 16 projects during the period from its first agreement with the Carpenters to its repudiation (August 1979 to May 8, 1984). Of the 110 carpenters, one worked on ten jobs; one worked on eight jobs; two worked on four jobs; four worked on three jobs; two worked on two jobs; and 100 worked on one job. These figures demonstrate a lack of significant carry-over of employees from project to project and the inconsistency in the identity of individuals employed by Mesa Verde at any given time. See generally KBR Elec., 812 F.2d at 498; Construction Erectors, Inc. v. NLRB, 661 F.2d 801, 804 (9th Cir.1981); Construction Erectors, Inc., 265 N.L.R.B. 786, 788 (1982); Giordano Constr. Co., 256 N.L.R.B. 47, 48 (1981).[4] This unstable work force does not possess "sufficient continuity as to merit continued reliance on showing of majority support for the union made at any point during the relevant period." Construction Erectors, Inc., 265 N.L.R.B. at 787 & n. 11 ("relevant period" normally being the term of the collective bargaining agreement). The Carpenters' contention that it had the support of a majority of Mesa Verde's carpenters throughout the collective bargaining relationship does not affect Mesa Verde's status as job-by-job employer. See New Mexico Dist. Council of Carpenters & Joiners v. Jordan & Nobles Constr. Co., 802 F.2d 1253 (10th Cir.1986) (employer hiring exclusively union workers is still job-by-job employer capable of repudiating pre-hire obligations as to future job sites); see also Dee Cee Floor Covering, Inc., 232 N.L.R.B. 421, 422 (1977).
 
 
 22
 The Carpenters attempt to point to a "core" group of carpenters employed by Mesa Verde during 1982. See generally Constr. Erectors, Inc., 265 N.L.R.B. at 787-88 (a core group of employees moved by the employer from job to job and performing a substantial majority of the employer's work constitute a permanent and stable work force). Even assuming the appropriateness of isolating the work-force analysis to a single year of the agreement's term,[5] the group of employees identified by the Carpenters as working for Mesa Verde in 1982 was not a core group moving from job to job. The record cited by the Carpenters shows that of the five employees working on the five jobs in 1982, T. Sliger worked 38 hours on one job (with Lugo); Ayala worked 234 hours on one job; Landes worked 551 hours on one job; J. Sliger worked 890 hours on one job (with Lugo); and Lugo worked 1325 hours on three jobs (with T. Sliger on one job and with J. Sliger on another). As a matter of law, Mesa Verde's work force was not permanent and stable.
 
 B. Repudiation as to Future Projects
 
 23
 Because Mesa Verde hired laborers and carpenters on a project-by-project basis, it was free to repudiate its collective bargaining agreements with the unions as to future projects. See KBR Elec., 812 F.2d at 498. Its May 1984 letters to the unions therefore effectively relieved Mesa Verde of any contractual obligations to the unions on projects begun after the repudiation. Id. at 498-99 (party may repudiate a pre-hire agreement by giving other party actual or constructive notice of its intent not to be bound); Endicott Enters., 806 F.2d at 922-23 (same).
 
 
 24
 The unions make several arguments against this conclusion. First, the Carpenters argue that the favorable working conditions obtained by Mesa Verde through the September 8, 1982 extension agreement both estopped it from repudiating its obligations and effected a waiver of its right to repudiate. We reject the contention that the terms of a pre-hire agreement, or the benefits gained by entering into it, can alone effect a waiver of a party's right to repudiate. Such a rule would, in effect, overrule our decisions recognizing the federal labor policy granting the right to repudiate and permitting repudiation of pre-hire agreements notwithstanding termination clauses in the agreements to the contrary. See, e.g., KBR Elec., 812 F.2d at 497 n. 1; Beck Eng'g & Surveying Co., 746 F.2d at 566.
 
 
 25
 Second, the unions argue that even if Mesa Verde's work force was not permanent and stable, Mesa Verde could not repudiate its contractual obligations as to future projects because at the time of repudiation the majority of its carpenters and laborers working at its ongoing Hercules project supported the unions. This position is at odds with the above-stated rule that an employer hiring employees on a job-by-job basis may repudiate pre-hire contractual obligations as to future jobsites.[6]
 
 
 26
 Finally, the unions cite Deklewa v. International Association of Bridge Workers, Local 3, 282 N.L.R.B. No. 184 (1987), an NLRB decision entered after oral argument in this appeal. The NLRB in Deklewa overruled a number of its prior decisions and interpreted 29 U.S.C. Sec. 158(f) to permit termination of a pre-hire collective bargaining relationship only upon expiration of the collective bargaining agreement or employee rejection of their collective bargaining representative in an NLRB-conducted election. The unions argue that while Mesa Verde repudiated its collective bargaining agreements neither of the Deklewa conditions has been met and that Mesa Verde therefore remains bound. Mesa Verde counters that the Deklewa decision applies retroactively only to matters pending before the NLRB and does not mandate retroactive application of its principles by the district court.
 
 
 27
 Were the law of this circuit a blank slate, we would defer to the NLRB's Deklewa decision if it presented a reasonable interpretation and application of the National Labor Relations Act. See, e.g., NLRB v. Action Automotive, Inc., 469 U.S. 490, 496, 105 S.Ct. 984, 988, 83 L.Ed.2d 986 (1985). The mere fact that the NLRB has changed its position on the pre-hire issue would not justify our de novo construction of the Act. NLRB v. Local Union No. 103, Int'l Ass'n of Bridge Workers, 434 U.S. 335, 351, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978). However, the Deklewa decision stands in conflict with prior decisions of this court permitting an employer, absent majority support for the union in the appropriate bargaining unit, to repudiate pre-hire obligations by giving actual or constructive notice of its intent to terminate the agreement. Under Royal Development Co. v. NLRB, 703 F.2d 363, 369 (9th Cir.1983), we are not permitted to overrule prior panels' interpretations of the Act, even with intervening NLRB case law. The unions' argument under Deklewa should be addressed to the full court in a petition for rehearing en banc.[7]
 
 CONCLUSION
 
 28
 The judgment of the district court is AFFIRMED.
 
 NOONAN, Circuit Judge, concurring:
 
 29
 Deklewa v. International Association of Bridge Workers, Local 3, 282 NLRB 184 (1987), is a new and authoritative interpretation of Section 8(f). The Board rejects the judicial gloss on the statute which permitted parties to 8(f) agreements unilaterally to repudiate their agreements. The Board rejects the distinction between "permanent and stable" and "project by project" work forces.
 
 
 30
 The Board's interpretation is a reasonable interpretation and application of the National Labor Relations Act and is therefore entitled to deference. NLRB v. Action Automotive, Inc., 469 U.S. 490, 496, 105 S.Ct. 984, 988, 83 L.Ed.2d 986 (1985). The Board applied its new rules retroactively, and there is no reason that we should not follow this retroactive application. However, Deklewa is contrary to previous circuit law. The circuit should take the opportunity now to correct this law en banc in accordance with Deklewa. The old law is not only contrary to the present authoritative administrative interpretation of the National Labor Relations Act; it is also contrary to the federal preference for arbitration over litigation in the federal courts. The old law is also a judicial gloss on a statute that has the effect of derogating from normal principles of contract.
 
 
 
 [1]
 The district court held that it and not the arbiter could properly resolve the repudiation issue because the right to repudiate was statutory rather than contractual
 
 
 [2]
 We note, however, the seeming tension between the Ion Construction and Griffith Construction decisions in the pre-hire context and the general federal policy favoring arbitration and permitting the arbitration of the issues of contract termination and repudiation. See, e.g., California Trucking Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers Local 70, 679 F.2d 1275, 1282 (9th Cir.), cert. denied, 459 U.S. 970, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982). See generally AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)
 
 
 [3]
 In a footnote in their opposition papers to Mesa Verde's summary judgment motion the Laborers requested an evidentiary hearing in the event the district court ruled against them. This conditional request does not constitute a proper Rule 56(f) motion. Cf. Brae Transp., 790 F.2d at 1443 ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)."). To permit the non-moving party a second bite at the apple to establish a genuine factual issue in the event the court finds no genuine issue of fact to exist would frustrate the purpose of the summary proceeding
 
 
 [4]
 The NLRB decisions cited herein have been undermined by the NLRB's recent decision in Deklewa v. International Association of Bridge Workers, Local 3, 282 N.L.R.B. No. 184 (1987), which rejected the NLRB's prior approach of distinguishing between stable and unstable work forces in the pre-hire context. As we do not follow Deklewa but rather follow case law developed by this circuit and the NLRB prior to it, see infra section III(B), we find these previous NLRB decisions helpful in resolving the present work force issue
 
 
 [5]
 Relying on the existence of a core group of employees during one year and ignoring other years does not seem an accurate means of predicting majority support for the duration of the agreement and therefore is not a particularly appropriate method for characterizing a work force as permanent and stable
 
 
 [6]
 The unions cite V M Construction Co. v. Montalvo, 241 N.L.R.B. 584, 584 nn. 1 & 2 (1979), which, though not entirely clear on the subject, could be interpreted as prohibiting a project-by-project employer from repudiating as to future projects when it has ongoing projects with union support. We, however, see no basis in law or policy for requiring a project-by-project employer to terminate ongoing projects in order to assert a statutory right to repudiate as to future projects. Of course, this right to repudiate as to future projects does not extend to ongoing projects at which the union enjoys majority support. Mesa Verde does not seek in the present action a declaration of its obligations to the unions with respect to the then ongoing Hercules project
 
 
 [7]
 The suitability of the Royal Development rule, which requires en banc consideration to implement many changes in NLRB decisional law, also may warrant the review of the court en banc