ORANGE BELT DISTRICT COUNCIL
OF PAINTERS NO. 48, et al.,
Plaintiffs-Appellees,

v.

Dave KASHAK dba Dave Kashak Paint-
ing Co., Defendant-Appellant.

No. 84–6387.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 5, 1985.

Decided Oct. 24, 1985.

Stuart Libicki, Terri A. Tucker, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, Cal., for plaintiffs-appellees.

Richard C. Binder, Pasadena, Cal., for defendant-appellant.

Before SNEED, NELSON and NORRIS, Circuit Judges.

SNEED, Circuit Judge:

Kashak appeals from a judgment of the United States District Court for the Central District of California that confirmed an arbitration award in favor of the plaintiffs the Union). Kashak contends that the matter was not properly before the arbitration panel and that the arbitration process was defective. We affirm.

## I.

### FACTS

In May 1975, Kashak, who operates a painting company, entered into an agreement with the Union. The agreement required Kashak to make fringe benefit contributions to several trust funds on behalf of his employees and to submit his books and records to the trustees of the fund for examinations and audits upon demand. The 1975 agreement was renewed twice; the most recent contract covered Kashak's relation with the Union from 1980 to 1985. Kashak apparently complied with the contribution requirements through June 1982. E.R. at 153–54, 205.

On July 26, 1982, pursuant to the agreement, the Union asked Kashak to produce his books and records for audit. *Id.* at 179. On July 30, 1982, Kashak responded by sending a certified letter to the Union that purported to "serve as notice that [Kashak] does hereby repudiate and terminate any and all collective bargaining agreements which might exist between employer and your labor organization." *Id.* at 171. The Union received the letter on August 2.

On September 20, 1982, the Union, following procedures prescribed in its May 14, 1975 agreement with Kashak, filed a charge against Kashak with the Joint Judicial Committee (the Committee), an informal tribunal established by article 11 of the agreement. The Union charged that Kashak had violated the agreement by failing to produce his books and records for examination by the Union. Kashak was ordered by the Committee to produce his books and records for the period covering May 1975 through September 1982 or to pay $7,500 in liquidated damages to the trust fund.

In accordance with the terms of the agreement, Kashak appealed the Committee's order to a properly authorized arbitrator. The agreement empowered arbitrators to resolve "any disputes whether such have arisen under this or previous agreements." *Id.* at 82–83. At the hearing in April 1983, the arbitrator proposed that the parties stipulate that "this dispute is properly in arbitration pursuant to the terms of the ... agreement." *Id.* at 144. Kashak agreed to that stipulation, but he added that he would "reserve all [his] rights to object to the arbitration based upon any defenses [he] might have to the collective bargaining agreement itself." *Id.* at 145. The attorney for the Union was satisfied with this, noting: "[I]t is my understanding that the employer ... reserves any defenses that it has and *that the arbitrator is in power to determine those defenses in the first instance." Id.* (emphasis added). Kashak's attorney made no objection to the Union's understanding of his reservation. That each perfectly understood the other is not certain.

On the merits, Kashak argued in arbitration that the Committee's award violated California's statute of limitation for contract actions. More importantly, however, he insisted that the agreement had been repudiated by his letter of July 30, and that he therefore had no further obligations under the agreement. The Union argued that the repudiation was ineffective because the Union had achieved majority support among Kashak's employees before Kashak's letter of repudiation. The arbitrator accepted the Union's evidence of majority support and found for the Union. *Id.* at 206–07. The arbitrator therefore ordered Kashak to submit his books and records to the Union for inspection and audit. He also assessed liquidated damages against Kashak in the amount of $1,000, as provided in the agreement.

Kashak refused to comply with the arbitration award. The Union then filed a petition in the district court to have the award confirmed. The arbitration award was confirmed. Kashak in a timely fashion filed this appeal.

## II.

### DISCUSSION

#### A.

■ Because this case involves a somewhat complex area of labor law, we begin by stating applicable general principles. An employer violates the National Labor Relations Act, 29 U.S.C. §§ 151–169 (1982) (the Act), if he enters into an agreement with a labor organization that has not won a representation election sponsored by the National Labor Relations Board or that has not been recognized pursuant to the procedures specified in the Act. *International Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). Section 9(a) of the Act, 29 U.S.C. § 159(a) (1982), requires that the exclusive bargaining agent for an appropriate group of employees be the union that has been "designated or selected for the purposes of collective bargaining by the *majority* of the employees." *Id.* (emphasis

added); *see* R. Gorman, *Basic Text on Labor Law: Unionization and Collective Bargaining* 203 (1976) [hereinafter cited as R. Gorman].

■ Section 8(f) of the Act, 29 U.S.C. § 158(f) (1982), however, provides a narrow exception to this general rule. That section permits an employer "engaged ... in the building and construction industry" to negotiate a labor agreement with a union, even if that union has not demonstrated "majority status." Congress added § 8(f) to the Act in 1959, Pub.L. No. 86–257, § 705(a), 73 Stat. 519, 545 (1959), in part because it recognized that construction industry employers typically have different jobs in different localities, complete work projects in a relatively short time, and hire a highly transient workforce organized along traditional craft lines. Because of these circumstances, Congress felt that employees in the construction industry rarely would have a sufficient stake in any one employer to petition for a certification election. *See* R. Gorman, *supra,* at 647. Contracts authorized by section 8(f) are usually called "pre-hire" agreements, although they need not be negotiated before a construction employer hires his workforce. A simpler definition is: A section 8(f) agreement is a labor contract negotiated between a construction employer and a "union [that] does not represent a majority [of the employees] at the time of contract execution." *Construction Erectors, Inc. v. NLRB,* 661 F.2d 801, 804 (9th Cir.1981).

■ Nonetheless, a section 8(f) agreement does not have the same status as a collective bargaining agreement. An employer, for example, may unilaterally repudiate a section 8(f) agreement; thereafter he is not bound by its provisions. *NLRB v. Local Union No. 103, International Association of Bridge, Structural & Ornamental Iron Workers (Higdon),* 434 U.S. 335, 341, 98 S.Ct. 651, 655, 54 L.Ed.2d 586 (1978). Nor may a union picket a construction site to force an employer to comply with a section 8(f) agreement. *Id.*

■ Section 8(f) agreements are not, however, without any legal significance. Prior to employer repudiation, the monetary obligations of a section 8(f) agreement can be enforced against him in the federal courts. *See Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 267–72, 103 S.Ct. 1753, 1757–59, 75 L.Ed.2d 830 (1983). Perhaps more significantly, if the union gains the support of a majority of the employees, an employer can no longer repudiate the agreement. It will have ripened into a fully-binding, mature collective bargaining agreement. *Id.* at 268–69, 103 S.Ct. at 1757–58; *Higdon,* 434 U.S. at 345–46, 98 S.Ct. at 657–58.

### B.

■ Kashak admits that the original agreement was a valid section 8(f) agreement. He contends only that he had no obligations under the agreement, because the Union did not have majority support when he repudiated the agreement. This argument is wide of the mark. The Union requested the books and records on July 26, 1982, shortly *before* Kashak repudiated the agreement. Inasmuch as the agreement expressly authorizes such audits, Kashak was bound to make the requested materials available for the period before his attempted repudiation. This obligation was unaffected by his repudiation. To argue that his repudiation released him from any duty to fulfill preexisting obligations under the agreement flies in the face of *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 271, 103 S.Ct. 1753, 1759, 75 L.Ed.2d 830 (1983) (allowing a union to enforce "obligations accrued under a prehire agreement prior to its repudiation"). A failure of the Union to attain majority support would not relieve Kashak of the duty to produce the books and records attributable to periods before the date of the attempted repudiation. The arbitrator's decision on this point is clearly correct.

### C.

Kashak's claim relating to records for periods after the attempted repudiation fails for a different reason. The agree-

ment had become fully binding. The arbitrator found majority support. Both parties argued the majority support issue to the arbitrator. *See* E.R. at 148 (oral argument by Kashak's attorney at the arbitration hearing), 175 (brief of Union to arbitrator), 178 (same) & 181–82 (reply brief of Kashak to arbitrator).

■ Kashak insists, however, that he did not submit this issue to the arbitrator, and that the district court should not have confirmed the arbitration award, but should have made an independent determination on the majority support issue.[1] He relies on his attorney's reservation of "all [his] rights to object to the arbitration based upon any defenses [he] might have to the collective bargaining agreement itself." *Id.* at 145. Kashak argues that this reservation preserved for him a right of initial decision by the district court.[2]

We are not convinced. First, it is not immediately clear that the language of this reservation includes Kashak's present claim. The reservation might more easily be understood to reserve claims of duress or adhesion in the original execution of the agreement. Second, it is inconsistent with the subsequent actions of the parties. Both parties argued the issue of majority support to the arbitrator. Moreover, the arbitrator's decision addressed this point specifically. *Id.* at 204–07. Finally, the agreement of the parties clearly contemplated that arbitration would resolve all disputes arising under the agreement. *Id.* at 82–83.

■ On this point, this case does not differ materially from *George Day Construction Co. v. United Brotherhood of Carpenters,* 722 F.2d 1471 (9th Cir.1984). There the employer argued that the arbitrator improperly decided the issue of arbitrability, but the court rejected that contention, relying on the conduct of the parties at the arbitration hearing as evidence of their intent. *Id.* at 1475. Similarly, in this case, the actions of the parties at the hearing, their statements in their briefs to the arbitrator, and their earlier agreement make it clear that they intended to submit this issue to the arbitrator. We reject the notion that Kashak only sought a "mock" decision from the arbitrator.[3]

### D.

■ The only task remaining is to review the decision of the arbitrator and the arbitration procedures. This circuit has previously discussed the standard of review for courts reviewing arbitration decisions of labor cases:

---

1. Both parties argued the majority support issue in the district court. Because the district judge made no findings of fact and instead simply granted the Union's petition, it is not possible to tell on what he based his decision. Accordingly, it is possible that the district judge did make an independent determination of majority support, finding in favor of the Union. Considering the paucity of discussion in that court, however, it seems more probable that he properly intended to confirm the arbitration award without making independent findings to support it.

2. Kashak also insists that the parties could not confer upon the arbitrator the power to decide the issue of majority support, arguing that an arbitrator cannot decide a question of arbitrability. *See* Brief of Appellant at 11–12. This contention is clearly wrong. If the parties clearly agree to submit the issue of arbitrability to the arbitrator, the arbitrator will have power to decide the issue. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d

1409 (1960); *George Day Constr. Co. v. United Bhd. of Carpenters,* 722 F.2d 1471, 1474–75 (9th Cir.1984); *International Bhd. of Teamsters v. Washington Employers, Inc.,* 557 F.2d 1345, 1349 (9th Cir.1977). Moreover, the issue in question is different from the question of arbitrability. The parties did not dispute the agreement to arbitrate, but only a factual question, the Union's attainment of majority support among Kashak's employees. There is no reason why an arbitrator should not decide such an issue. In fact, as we have pointed out above, he could not decide the questions presented to him *without* deciding the question of majority support.

3. Admittedly, the actions of the parties at the arbitration hearing in this case are not completely unambiguous. Yet the arbitrator and both parties seem to have expected a decision on the majority support issue. This is plainly inconsistent with Kashak's argument. *See also* E.R. at 145 (response of Union's attorney to Kashak's reservation).

[I]f on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the decision is ambiguous, and notwithstanding the erroneousness of any factual findings or legal conclusions, absent a manifest disregard of the law.

*George Day Construction Co. v. United Brotherhood of Carpenters,* 722 F.2d 1471, 1477 (9th Cir.1984) (citations omitted). The only exception to this broad deference justifies reversal of "an award which actually violates the law or any explicit, well defined and dominant public policy." *Id.; see W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America,* 461 U.S. 757, 764–65, 103 S.Ct. 2177, 2182–83, 76 L.Ed.2d 298 (1983).

■ There is in this case a clear legal basis for the arbitrator's decision. This was a section 8(f) prehire agreement that, as already pointed out, had ripened into a collective bargaining agreement when the Union attained majority support. Because the parties submitted the issue to the arbitrator, and because the arbitrator's decision violates no overriding public policy, the district court was correct in deferring to the decision of the arbitrator on the majority support issue.[4]

■ Kashak also has several objections to certain aspects of the procedure of the arbitration. We will consider each of these claims separately. First, Kashak argues that the award should be set aside under 9 U.S.C. § 10(b) (1982) because the arbitrator was biased and partial. This claim must be rejected because the arbitrator was selected from a list approved by Kashak when he signed the agreement.

■ Second, Kashak argues that the award is invalid because it did not reach all of the issues submitted. In particular, he complains that the arbitration award did not discuss his claim that the action was barred by the statute of limitations. This contention is equally unfounded. The only two issues submitted to the arbitrator were (1) whether the decision of the Committee should have been sustained; and (2) if so, what remedy would be appropriate. *See* E.R. at 145. Both of these issues *were* decided by the arbitrator. It is irrelevant that the arbitrator's written decision did not discuss all of Kashak's legal arguments.[5]

Third, Kashak argues that the Supreme Court's decision in *Schneider Moving & Storing Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), renders this arbitration award nonbinding. This argument is inconsequential. *Schneider Moving* held that trustees of multi-employer trust funds may seek judicial enforcement of contribution obligations without first going to arbitration. It did not hold that when the parties *do* agree to submit their disputes to arbitration, the resulting

---

4. Kashak seems to have two major objections to the arbitrator's decision. First, he argues that the award, which required him to open his books for a period covering seven years, violated California's four year statute of limitations on contract actions, Cal.Civ.Proc.Code § 337 (West 1982). *See, e.g.,* Brief of Appellant at 15. The Union responds that the statute did not begin to run until discovery of the malfeasance, if any, of the employer. *See Seymour v. Hull & Moreland Eng'g,* 418 F.Supp. 190 (C.D.Cal.1976), *modified on other grounds,* 605 F.2d 1105 (9th Cir.1979).

Kashak's second argument is that the Union did not sufficiently prove majority support. *See, e.g.,* Reply Brief of Appellants at 3–4. The Union argues that the evidence in the record was adequate to support the arbitrator's finding.

*See, e.g., Davis Indus.,* 232 N.L.R.B. 946, 952 (1977) (relying on union security clauses to find majority support). We need not address the merits of either of these issues. Suffice it to say that the arbitrator's decision in this case did not violate any public policy so "dominant" as to require reversal of his decision.

5. Kashak bases this claim on *M.B. Zaninovich, Inc. v. Teamster Farmworkers Local Union 946,* 86 Cal.App.3d 410, 150 Cal.Rptr. 233 (1978). In that case the submission agreement specifically asked for the amount of money owed by the employer; the award failed to specify any amount. The award involved here is entirely different. It specifically answers both of the issues in the submission agreement.

award is entitled to no deference from the federal courts.

Finally, the Union asks us to order Kashak to pay its attorney fees. This court has discretion to award attorney fees and costs only if an appeal is frivolous. As this court has noted, "An appeal is frivolous if the result is obvious or if the claims of error are wholly without merit." *Malhiot v. Southern California Retail Clerks Union,* 735 F.2d 1133, 1137 (9th Cir.1984); *see Gattuso v. Pecorella,* 733 F.2d 709, 710 (9th Cir.1984); *DeWitt v. Western Pacific Railroad,* 719 F.2d 1448, 1451 (9th Cir.1983). This appeal is not frivolous; therefore, we must reject that request.

Because Kashak has pointed out no defect in the arbitration award, or in the district court's confirmation of that award, the judgment of the district court is affirmed.

AFFIRMED.