**PLUMBERS AND PIPEFITTERS LOCAL UNION 72 OF the UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, Plaintiff–Appellant,**

v.

**JOHN PAYNE CO., INC., Defendant–Appellee.**

No. 87–8588.

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1988.

**1536**

Frank B. Shuster, Blackburn, Shuster, King & King, Atlanta, Ga., for plaintiff-appellant.

Dion Y. Kohler, Powell, Goldstein, Frazer & Murphy, J. Roy Weathersby, Atlanta, Ga., for defendant-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge:

The Plumbers and Pipefitters Local Union 72 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("the Union") brought this action against John Payne Co., Inc. ("the Company") under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The Union seeks to enforce against the Company the terms of the multi-employer prehire agreement between it

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

and the Association of Mechanical Contractors of Atlanta ("AMCA"). The Union claims that the Company unlawfully breached the agreement by violating certain of its wage, fringe benefit and hiring hall provisions. The district court granted the Company's motion to dismiss for lack of subject matter jurisdiction and denied the Union's motion for summary judgment. The Union appeals.

## I

Over the years, the AMCA has executed a series of prehire agreements with the Union on behalf of its member employers. In a document dated March 9, 1976, the Company authorized the AMCA to negotiate collective bargaining agreements on its behalf with the Union.[1] The Company now claims that it revoked this authorization in 1977 or 1978. On November 5, 1985, the Union filed a grievance against the Company pursuant to the 1984–86 Union–AMCA prehire agreement. The Joint Conference Committee, designated to resolve disputes between the parties to the agreement, found the Company in violation of the contract. In the district court, the Union sought to enforce this decision by the Joint Conference Committee.

The district court cited two reasons why it lacked subject matter jurisdiction. First, it believed that the employer's defense of repudiation raised "representational issues regarding prehire agreements," issues within the primary jurisdiction of the National Labor Relations Board (the "NLRB"). Second, the district court found that "this case most fundamentally involves the validity of a purported agreement between the Union and John Payne Company and not whether John Payne Co. has breached it [the agreement]."

Thus, the issue before us is whether the district court erred in holding that it was without jurisdiction to adjudicate the Union's claims under § 301 of the LMRA. A determination by a district court that it is without subject matter jurisdiction turns on a question of law. Accordingly, our review is *de novo*. *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988); *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987); *United States v. McKennon*, 814 F.2d 1539, 1543 (11th Cir.1987). *See also Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Company*, 779 F.2d 497, 499 (9th Cir.1985), *aff'd on other grounds*, —— U.S. ——, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988) ("A district court's determination that it is without subject matter jurisdiction is reviewed *de novo* ").

Our independent analysis leaves us convinced that the disposition of this suit would not require the district court to decide any representational issues, or other LMRA questions, that fall within the primary jurisdiction of the NLRB. Furthermore, we are unable to agree that the primary issue in this case is one of the validity of the AMCA–Union agreement.[2]

---

1. The March 9, 1976 document is entitled "Authorization of Association of Mechanical Contractors of Atlanta, Inc. as Collective Bargaining Representative." It states as below.

    It being the intent of John Payne Co., Inc. to be bound by collective action rather than individual action, John Payne Co., Inc. hereby empowers and appoints the Association of Mechanical Contractors of Atlanta, Inc. to represent John Payne Co., Inc. in collective bargaining negotiations with the Plumbers and Steamfitters Local No. 72 and to enter into a collective bargaining contract with said union on behalf of John Payne Co., Inc.. Further, John Payne Co., Inc. authorizes a copy hereof to be served on the said union.

    The document is signed by John W. Payne, President of John Payne Co., Inc.

2. In its brief, the Company summarily asserts this case presents substantial questions as to whether it ever agreed to be bound by the terms of the AMCA–Union agreement. That the March 9, 1976 authorization document constituted an assent by the Company to be bound by the terms of the AMCA–Union agreement is beyond question. In addressing the Company's contentions that the authorization effectuated by the letter expired on July 31, 1976 and the additional claim that its conduct subsequent to March 9, 1976 evidenced that it never intended to be bound by the AMCA–Union agreement, the district court would not be required to determine the validity of the prehire agreement or ascertain whether the Company agreed to be bound by its terms. Rather, the district court's inquiry would focus on questions pertaining to whether the Company made an effective repudi-

Rather, the Union's suit can most accurately be characterized as an action to enforce the terms of the AMCA–Union prehire agreement against the Company. To the extent this cause of action seeks to enforce any of the Company's monetary obligations that may have accrued under the AMCA–Union agreement, we believe the district court does have subject matter jurisdiction under § 301 of the LMRA. Therefore, we will reverse and remand to the district court.

## II

The Union does not claim to have ever achieved majority representative status among the Company's employees. Accordingly, with regard to the John Payne Company, the AMCA–Union agreement can only be viewed as a prehire agreement, as contemplated by § 8(f) of the LMRA, 29 U.S.C. § 158(f), and not as a fully enforceable collective bargaining agreement. *See Orange Belt District Council of Painters v. Kashak,* 774 F.2d 985, 988 (9th Cir.1985) ("A section 8(f) agreement is a labor contract negotiated between a construction employer and a 'union [that] does not represent a majority [of the employees] at the time of contract execution'" (quoting *Construction Erectors, Inc. v. NLRB,* 661 F.2d 801, 804 (9th Cir.1981)). *See also National Labor Relations Board v. Local Union No. 103, International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO (Higdon),* 434 U.S. 335, 349–50, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978) (when a union that is a party to a prehire agreement becomes a majority representative within the bargaining unit, "the prehire agreement attains the status of a collective bargaining agreement executed by the employer with a union representing a majority of the employees in the unit."); *Painters Local Union No. 164 of the Brotherhood of Painters v. Epley,* 764 F.2d 1509, 1514 (11th Cir.1985), *cert. denied* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed. 2d 182 (1986); *Carpenters Local Union No. 1846 of the United Brotherhood of Carpenters and Joiners of America,*

*AFL–CIO v. Pratt–Farnsworth, Inc.,* 690 F.2d 489, 522 (5th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983) ("[prehire] agreements ripen into fully enforceable collective bargaining agreements upon demonstration of a union majority").

It is true that the Union's complaint seeks enforcement of the "arbitral award" made by the Joint Conference Committee designated to resolve all disputes between the parties to the AMCA–Union agreement. Nevertheless, the dispositive questions as to the Company's obligations under the agreement go to (i) whether the Company has made an effective repudiation of that prehire agreement, and if so, (ii) the date its repudiation of the agreement became effective. Unless the Company is determined to have been a party to the prehire agreement during all, or a portion of the period of time the Union alleges it to have been in violation of the agreement's provisions, the Company cannot be said to be bound in any fashion by the arbitral award of the Joint Conference Committee. *See John S. Griffith Construction Co. v. United Brotherhood of Carpenters & Joiners,* 785 F.2d 706, 712 n. 5 (9th Cir.1986) ("if the Court finds that the employer's repudiation [of a prehire agreement] was effective, there is no longer any agreement to arbitrate disputes between the parties").

Thus, it is clear that the issues on the merits of the Union's complaint center on the question of whether the Company has made an effective repudiation of the AMCA–Union agreement, and the extent, if any, of the Company's accrued but unsatisfied monetary obligations under the agreement. The Company claims that it ceased to be a party to the agreement sometime in 1978 or 1979. The Union contends the Company has not repudiated and seeks judicial enforcement of the agreement against the Company, both retroactively and prospectively. Therefore, we must conclude that the underlying cause of action of the Union's complaint seeks to enforce the AMCA–Union prehire agreement against the Company.

ation of the AMCA–Union agreement at any     point after March 9, 1976.

### III

The standards pertaining to judicial enforcement of § 8(f) prehire agreements are different from the standards for enforcement of collective bargaining agreements between majority representative unions and employers. *See Kashak,* 774 F.2d at 988 ("a section 8(f) agreement does not have the same status as a collective bargaining agreement"). The genesis of the special status accorded § 8(f) prehire agreements, and the reason for their treatment separate and apart from collective bargaining agreements negotiated between employers and majority representative unions under § 301, is found in the fact that § 8(f) grants to employers and unions in the building and construction industry an exemption from the general rule barring employers from according recognition to unions that have not achieved majority representative status. *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 265, 103 S.Ct. 1753, 1756, 75 L.Ed.2d 830 (1983). Thus, § 8(f) permits construction industry employers and unions to enter into agreements setting wages, hours and conditions of employment, without requiring the union to have secured majority status through the § 9 LMRA representation procedures. *Epley,* 764 F.2d at 1513.

The case law relevant to the enforcement of § 8(f) prehire agreements centers on the Supreme Court's decisions in *Higdon, supra* and *McNeff, supra. Higdon* was not a § 301 enforcement action. Rather, it arose in the context of an unfair labor practice proceeding prompted by the attempt of a non-majority union to force an employer to comply with the terms of a prehire agreement. The employer filed an unfair labor practice charge averring that, by picketing the employer for more than thirty days without filing a petition for a representation election with the National Labor Relations Board, the union had violated § 8(b)(7)(C) of the LMRA, 29 U.S.C. § 158(b)(7)(C).[3] In affirming the NLRB's

finding of a § 8(b)(7)(C) unfair labor practice violation, the Court made clear its view that the consummation of a prehire agreement between an employer and a non-majority union does not entitle the union to the same deference and rights that the LMRA accords an exclusive bargaining representative with proven majority status. *Higdon,* 434 U.S. at 346, 98 S.Ct. at 658.

Unlike *Higdon, McNeff* was a § 301 action brought by a union to enforce the terms of a prehire agreement that obligated a signatory construction employer to make certain monthly contributions to a fringe benefits trust fund administered by the union. After discussing the holding in *Higdon,* the *McNeff* opinion takes care to distinguish the issue it decides from the issue decided in *Higdon.* It notes that *Higdon* did not pertain to § 301 actions to enforce prehire agreements, but rather was concerned with the employer's obligation under the LMRA to bargain with a majority representative union. 461 U.S. at 267, 103 S.Ct. at 1757.

The *McNeff* opinion goes on to identify the two interests Congress intended to serve when it enacted § 8(f): (i) protecting the § 7 rights of employees to select their own bargaining representative and (ii) ensuring that prehire agreements are entered into voluntarily and remain voidable by the employer until, and unless, the union achieves majority status within the bargaining unit. 461 U.S. at 267–269, 103 S.Ct. at 1757–58.

In *McNeff* the Court noted that in a § 301 suit seeking only to enforce the employer's monetary obligations under a prehire agreement, there is no concern with either the § 7 rights of employees, or the voluntary and voidable character of prehire agreements. 461 U.S. at 269, 103 S.Ct. at 1758. The Court stated further:

Unlike the situation in *Higdon,* enforcement of accrued obligations in a § 301 suit does not mean that the union repre-

---

**3.** Section 8(b)(7)(C) of the LMRA, 29 U.S.C. § 158(b)(7)(C) makes it an unfair labor practice for a union to picket, cause to be picketed, or threaten to picket an employer for the purpose of forcing the employer to recognize or bargain

with it where such picketing has been conducted for more than thirty days without a petition for a representation election having been filed under § 9(c) of the Act. 29 U.S.C. § 159(c).

sents a majority of the employer's employees. In a § 301 suit, the district court merely enforces a contract entered into by the employer—a contract that Congress has legitimated to meet a special situation even though employees themselves have no part in its negotiation or execution.... There is no sense in which [this type of] contract action has a recognitional purpose like that forbidden in *Higdon*.

*Id.*

In *McNeff*, the Supreme Court did not directly address the impact of the voidable nature of prehire agreements in § 301 actions to enforce same.[4] However, the Court noted that:

A § 8(f) prehire agreement is subject to repudiation until the union establishes majority status. However, the monetary obligations assumed by an employer under a prehire contract may be recovered in a § 301 action brought by a union prior to the repudiation of the contract, even though the union has not attained majority support in the relevant unit. 461 U.S. at 271–72, 103 S.Ct. at 1759.

Our Court has previously noted the distinction drawn in *McNeff* between "an employer's obligation under the [LMRA] to bargain with a representative of the majority of its employees and its duty to satisfy lawful contractual obligations that accrued after it enters a prehire contract." *Trustees of the Atlanta Iron Workers, Local 387 Pension Fund v. Southern Stress Wire Corporation*, 724 F.2d 1458, 1459

(11th Cir.1983) (quoting *McNeff*, 461 U.S. at 267, 103 S.Ct. at 1757). Consistent with *Southern Stress Wire Corporation*, we read *McNeff* to legitimate § 301 suits to enforce prehire agreements to the extent that such actions seek to compel employers to satisfy the monetary obligations they have accrued under such agreements.

## IV

The record leaves no doubt that the Company did effectively repudiate the AMCA–Union agreement not later than March 14, 1986. The March 12, 1986 letter from Company attorney J. Roy Weathersby to Local No. 72 Business Manager, Thomas C. Payne, states the Company's position that it "does not have a collective bargaining agreement with your Union." The letter states further that John Payne Company is not a member of the Association of Mechanical Contractors of Atlanta, Inc. and is not represented in collective bargaining matters by the Association.

■ It is has been held that "[a] mere breach of contract will not suffice to establish repudiation [of a prehire agreement]." *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Harkins Construction & Equipment Company, Inc.*, 733 F.2d 1321, 1327 (8th Cir.1984). However, an employer's conduct, if "sufficiently bald and open" or "open and notorious" so as to give a union notice of its intent to repudiate, can achieve that same result. *United Brotherhood of Carpen-*

---

**4.** The employer in *McNeff* had not repudiated, or claimed not to be a party to the prehire agreement at issue. Thus, the Court did not speak to the question of the impact of a § 301 action to enforce an employer's monetary obligations under a § 8(f) prehire agreement on the voidable, or the voluntary nature of such contracts. However, in concluding its substantive analysis, the Court in *McNeff* stated:

Apart from not offending the concerns noted in *Higdon*, allowing a minority union to enforce overdue obligations accrued under a prehire agreement prior to its repudiation vindicates the policies Congress intended to implement in § 8(f). Congress clearly determined that prehire contracts should be lawful to meet problems unique to the construction industry. However limited the binding effect of a prehire agreement may be, its strains

both logic and equity to argue that a party to such an agreement can reap its benefits and then avoid paying the bargained-for consideration. Nothing in the legislative history of § 8(f) indicates Congress intended employers to obtain free benefits of stable labor costs, labor peace, and the use of the union hiring hall. Having had the music, he must pay the piper.

By the same token, the union cannot simply accept the employer's performance under a prehire contract without upholding its end of the bargain. Neither party is compelled to enter into a § 8(f) agreement. But when such an agreement is voluntarily executed, both parties must abide by its terms until it is repudiated.

*Jim McNeff v. Todd*, 461 U.S. 260, 271, 103 S.Ct. 1753, 1759, 75 L.Ed.2d 830 (1983).

*ters and Joiners of America, AFL–CIO v. Endicott Enterprises, Inc.*, 806 F.2d 918, 920–21 (9th Cir.1986), *cert. denied* —— U.S. ——, 108 S.Ct. 260, 98 L.Ed.2d 217 (1987). Given the clarity of the message of repudiation conveyed by the March 12, 1986 letter of the Company attorney, we need not engage in any evaluation of the Company's conduct following the Union's March 14, 1986 receipt of that letter in order to conclude, as a matter of law, that a repudiation in fact occurred, effective on the latter date.

■ The present cause of action was brought by the Union on April 15, 1986, approximately one month after the latest date the Company can be said to have repudiated the AMCA–Union agreement. It remains to be determined whether the Company made an effective repudiation of the agreement before March 14, 1986. Regardless, we deal here with a § 301 suit by a union to enforce the terms of a prehire agreement that has been repudiated by an employer. As the Supreme Court stated in *McNeff:* "Union enforcement, by way of a § 301 suit, of monetary obligations incurred by an employer under a prehire contract *prior to repudiation* does not impair the right of employees to select their own bargaining agent." (emphasis supplied). 461 U.S. at 269, 103 S.Ct. at 1758. Because representational rights are not involved, the federal courts have jurisdiction under § 301 over a union's suit to enforce an employer's contractual obligations that accrued prior to its repudiation of a prehire agreement. *Id. See also Kashak*, 774 F.2d at 988 (holding that an employer that had effectively repudiated a prehire agreement was nevertheless obligated to satisfy its obligations that accrued under the agreement before it was repudiated). Thus, we conclude that to the extent the Union's cause of action seeks to enforce the Company's monetary obligations that accrued under the AMCA–Union prehire agreement prior to the date it made an effective repudiation of that agreement, the district court erred in dismissing that action for lack of subject matter jurisdiction.

However, the district court's jurisdiction under § 301 does not extend beyond the portion of the Union's complaint that seeks to enforce the Company's accrued monetary obligations under the AMCA–Union agreement. In a § 301 action to enforce a prehire agreement, any aspect of the claims raised or relief sought which affects the § 7 representational rights of employees falls beyond the scope of the § 301 cause of action legitimated by *McNeff.*

■ Through its cause of action the Union cannot seek to force the Company to comply with the terms of the AMCA–Union agreement that the Company has effectively repudiated. A suit with that purpose is not a contract enforcement action, but rather seeks to force the employer to grant *de facto* recognition to a non-majority union. "[A] union may not use a Section 301 suit offensively as a vehicle for establishing majority status." *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557, 562 (9th Cir. 1984) Therefore, we must conclude that to the extent the Union's cause of action seeks to compel the Company to comply with the AMCA–Union agreement in the future, it was properly dismissed by the district court for lack of subject matter jurisdiction. *See Northwest Administrators, Inc. v. Con Iverson Trucking, Inc.*, 749 F.2d 1338, 1339 (9th Cir.1984) ("Usually district courts have no jurisdiction to decide representational issues and must leave them for decision by the NLRB.").

■ In deciding whether the Company repudiated the AMCA–Union agreement before March 14, 1986, the district court will be able to limit its inquiry to matters contractual in nature that pertain solely to the question of whether the Company made an effective repudiation. *See Roberts v. Ayala*, 709 F.2d 520, 521 (9th Cir.1983). Such an analysis need not touch upon issues concerning the Union's majority status, or the form an appropriate bargaining unit at John Payne Company might take. *Cf. Beck Engineering & Surveying Co.*, 746 F.2d at 562 ("It is well settled that lack of majority status may not be asserted as a defense to a Section 301 suit"). In the

absence of judicial intrusion into those representational issues, there simply is no basis for concluding that adjudication of the Union's suit by the district court will require it to invade the primary jurisdiction of the National Labor Relations Board.[5] *See Con Iverson Trucking*, 749 F.2d at 1340 (concluding that in deciding whether an employer has repudiated a prehire agreement, a district court need not necessarily decide representational issues within the primary jurisdiction of the NLRB).

## V

We have determined that the district court has subject matter jurisdiction over the present action under § 301 of the LMRA, to the extent the suit seeks to enforce the monetary obligations the employer accrued under the AMCA–Union agreement before it made an effective repudiation of that agreement. Therefore, we reverse and remand to the district court.

On remand, the district court must determine the extent, if any, of the Company's monetary obligations to both the Union and its present and past employees who were formerly covered by the prehire agreement.[6] In order to accomplish that task, the district court must ascertain if, and if so when, the Company made an effective repudiation of the AMCA–Union agreement, prior to March 14, 1986.

REVERSED and REMANDED.

---

**5.** The record does not indicate that any unfair labor practice charges have been filed as a result of the present controversy between the Union and the Company. Regardless, even if this dispute were viewed as one involving potential unfair labor practice issues appropriate for resolution by the National Labor Relations Board, it is clear that the district court would have concurrent jurisdiction over this § 301 contract enforcement suit. See *Hines v. Anchor Motor Freight Lines*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 78 n. 12 (4th Cir.1967), *cert. denied* 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967); *Brown v. Sterling Aluminum Products Corp.*, 365 F.2d 651, 656 (8th Cir.1966), *cert. denied* 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967).

We note that a recent decision of the NLRB cited by the Company does indicate that under the current state of LMRA law, a fact situation like that attendant to this controversy might well present substantial unfair labor practice issues. In *John Deklewa & Sons v. International Association of Bridge, Structural and Ornamental Iron Workers, Local 3, AFL–CIO*, 282 NLRB No. 184, 124 LRRM 1190 (1987), *enforced International Association of Bridge, Structural and Ornamental Iron Workers, Local 3 v. NLRB*, (*Deklewa*), 843 F.2d 770 (3d Cir.1988), the NLRB reversed its prior holding, in *R.J. Smith Construction Co.*, 191 NLRB 693 (1971), *enforcement denied sub nom. Operating Engineers Local 150 v. NLRB*, 480 F.2d 1186 (D.C.Cir.1973), that § 8(f) prehire agreements can be unilateral-

ly repudiated by an employer or a union at any time.

In *Deklewa* the Board held, in relevant part: (1) § 8(f) prehire agreements are not voidable at will by an employer, or a union; (2) prehire agreements, once voluntarily consummated, are binding until either the agreement expires, or until a representation election is held establishing that the union signatory to the prehire agreement is not a majority representative; and (3) an employer that unilaterally repudiates a prehire agreement when neither of the two alternative conditions precedent listed in (2) above is present, commits a § 8(a)(5) unfair labor practice. 282 NLRB at —, 124 LRRM at 1194. We find nothing in *Deklewa* to indicate that the present action does not fall within the § 301 jurisdiction of the federal district courts identified in *McNeff*.

**6.** The union is entitled to enforce the terms of the prehire agreement on behalf of all of the Company's employees who the district court determines actually worked under it. *See International Association of Bridge, Structural & Ornamental Iron Workers, Local Union No. 103 v. Higdon Construction Company, Inc.*, 739 F.2d 280, 282 (7th Cir.1984). Therefore, if the district court finds that the Company did not effectively repudiate the terms of the AMCA–Union agreement prior to the date it ceased to honor those terms, it shall order the Company to satisfy its contractual obligations to both the union and those employees who worked under coverage of the agreement.